HENRY HOLMES *v.* BENJAMIN H. BRIDGMAN, *Administrator of* ELIZABETH WOOLEY.

*Administrators. Fraud.*

If an administrator neglects to seek redress from persons wrongfully withholding the property of the estate which he represents, being deterred therefrom by the wrongdoers' giving him a bond of indemnity against all acts or omissions to act as administrator, he is guilty of collusion with them, and liable for the amount lost to the estate by his bad faith.

If an administrator, after a thorough investigation of the matter, honestly though erroneously believed that certain notes of the intestate were given away by him before his death, and for this reason did not attempt to obtain them or their proceeds, he would not be liable for the amount so lost to the estate. *Aliter*, if he is wanting in due diligence in his investigations.

THIS was an appeal from the probate court in decreeing that the defendant was guilty of bad faith and wanting in due diligence as administrator of the estate of Elizabeth Wooley; and was chargeable for the property which he would have received as administrator by the exercise of reasonable diligence and good faith, as set forth in the opinion of the court.

The county court appointed a commissioner to report the facts, who found them as follows:

In March, 1849, Samuel Wooley Sen. died, leaving a farm worth $2700. Previous to his decease, he had given all his personal property to his son, and only heir, Samuel Wooley Jr., with the exception of certain notes. It was contended that these notes were also given and delivered to Samuel Jr. by his father in his lifetime. The commissioner

did not find the fact of such gift and delivery established by any fair preponderance of proof, but found that Samuel Wooley Sen. died the owner of good notes to the value, at the time of his decease, of $550.00, which notes were subsequently all collected, with interest, by Samuel Jr., or by his administrators Anna and Franklin A. Wooley. At his decease Samuel Wooley Sen., left surviving him said Samuel Jr., his only heir, and a widow Elizabeth Wooley. The widow Elizabeth at her husband's decease was aged and infirm in mind and body, and incapable of doing any business, or making any contracts. Samuel Jr. supported his mother to her satisfaction from his father's death till his own in March, 1852, and with her tacit consent took possession and enjoyed all the property of his father, real and personal, as his own. At his death the same, together with his own estate, derived from other sources, passed into the hands of his administrators, Anna and Franklin Wooley. The value of the rents and profits of one-third part of the real estate of Samuel Sen., from March, 1849, to March, 1852, three years, was, per year, $65. The support which he furnished to his mother for those three years was fairly equivalent to the use which he had of her interest in said real estate. Samuel Wooley Jr., at his decease in March, 1852, left surviving him a widow Anna Wooley and a son and only heir, Franklin A. Wooley. March 17th, 1852, Anna and Franklin were appointed administrators upon the estate of Samuel Jr., and on the same day, by the procurement of said Anna and Franklin, John Dwinell was appointed administrator upon the estate of Samuel Wooley Sen.

The widow Elizabeth lived with Anna and Frank from her son's death till November, 1852, when she was taken away from their house by one Evans, and carried to his own house, where she remained till July 11th, 1853. In November, 1852, Gideon Palmer was appointed guardian of the old lady, as an insane person; and Anna and Franklin gave him a sufficient bond as guardian to support her through life, at any other place than Evans—but they insisted from the first that they would never pay anything while she remained there. Mr. Palmer tried without success to get her away from Evans, and finding that his office was likely to prove troublesome, resigned, after about ten days' service, and December 3d, 1852, Mr.

Holmes *v.* Bridgman, Adm'r.

Holmes, the plaintiff, was appointed guardian in his stead. May 4th, 1853, Dwinell, as administrator of Samuel Wooley Sen., gave to Franklin A. Wooley a lease of all the real estate of said Samuel Sen. He and his mother were already in the occupancy of said real estate and had been so from the death of Samuel Jr. June 2d, 1853, on application of Holmes as guardian, commissioners were duly appointed to set out the dower of the widow Elizabeth in her husband's real estate. The commissioners set out said dower July 5th, 1853, on which day their report is dated. Their report was returned to and accepted by the probate court August 3d, 1853—and was recorded in Grafton town clerk's office, December 14th, 1853. July 6th, 1853, Holmes went on to that part of the dower, about fourteen acres, which was mowing, and exercised slight acts of possession. Franklin and Anna Wooley knew of the setting out of the dower when it was done, but not of the acts of Holmes, of the next day. In July, 1853, and again in 1854, Franklin A. Wooley without the consent of Holmes, entered upon the mowing land of the dower, and cut and carried away grass, worth, standing, $56.00. each year. Early in July, 1853, Holmes informed the overseer of the poor of Grafton that he had no funds to support the widow Elizabeth, and that he must take care of her. The overseer and other town officials applied to Anna and Franklin, who finally gave to the town of Grafton a good bond for the support of the old lady, at certain places named and at any other to be approved by the overseer of the poor. She was supported by Anna and Franklin from the time she left Evans till her death in December, 1854. July 11th, 1853, the town of Grafton gave to Franklin and Anna Wooley a lease of all the real estate of the old lady. Neither Franklin A. nor Anna ever paid any rent to Dwinell, administrator, nor to the town, nor were ever asked to do so. Soon after his appointment as guardian, Holmes informed Dwinell, administrator, that Samuel Wooley Sen. owned certain notes at his decease in which the widow Elizabeth had an interest, and urged him to get possession of them or their proceeds, that a just part thereof might be decreed to his ward, the widow Elizabeth. Mr. Dwinell investigated the subject and came to the conclusion, honestly but erroneously, that Samuel Sen. had given and delivered all his notes to his son Samuel Jr.

Holmes *v.* Bridgman, Adm'r.

Anna and Franklin insisted that such was the fact, and were in possession of them all, or their proceeds, and would not give them up. Mr. Dwinell could not have got possession of said notes, or proceeds, without an expensive lawsuit with Anna and Franklin. And he had in his possession or control no personal property of said Samuel Sen. to defray the expenses of such litigation. Dwinell rendered his administration account to the probate court December 28th, 1853, in which he gave no credit to the estate for any personal property. The account was allowed, and January 14th, 1854, Holmes as guardian took an appeal therefrom to the April Term of the county court 1854, which was duly entered and was pending at the decease of his ward. In November 1853, Holmes, as guardian, brought an action of trespass against Anna and Franklin A. Wooley, for the grass taken from the dower as before related. And in August, 1854, he brought another like suit against Franklin A. and certain of his hired men, for the grass taken from the dower in the latter year, as before related ; both actions were returnable to the county court, and were pending at the decease of Elizabeth Wooley. The value of the rents and profits of one-third part of the real estate from the decease of Samuel Wooley Jr., to the time the dower was set out, was found to be $65., and the annual value of such undivided third part was found to be the same to the time of the death of the widow Elizabeth, and the yearly value of the dower as actually set out was $65. January 16th, 1855, Dr. Benjamin H. Bridgman, the present defendant, was appointed administrator upon the estate of Elizabeth Wooley, by the procurement of Anna and Franklin A. Wooley. And thereupon Mr. Holmes made similar representations to him as he had done to the administrator Dwinell, with regard to notes owned by Samuel Sen. at his decease, and urged him to go forward with the proceedings commenced by him as guardian to obtain for the widow Elizabeth her just rights in the estate of her husband. Dr. Bridgman gave no decided answer at first, but promised to investigate the subject. Mr. Holmes rendered his guardian account, which was allowed by the probate court, August 1st, 1855, in which he was allowed a balance due him as such guardian for services and expenses of $245.65 Commissioners were appointed to adjust the claims against the estate of Elizabeth Wooley, and their report was returned to and accepted

Holmes *v.* Bridgman, Adm'r.

by the probate court, September 10th, 1855, by which a claim of Mr. Holmes was allowed of $252.28, being the balance due him on the settlement of his guardian account with interest. Administrator Bridgman appealed from the commissioners' report to the April Term of the county court 1856, and failing to enter his appeal the judgment of the probate court accepting said report was affirmed at that Term. Dr. Bridgman returned no inventory of the estate of Elizabeth Wooley. January 13th, 1856, Anna and Franklin A. Wooley gave a good bond to Dr. Bridgman, to indemnify him against all his acts or omissions to act as administrator of Elizabeth Wooley. Both before and after the giving of said bond, Holmes urged Dr. Bridgman to allow the use of his name to prosecute said two trespass suits, and said appeal from the allowance of administrator Dwinell's account, and April 7th, 1856, tendered to him a sufficient bond of indemnity. After both bonds were delivered, Dr. Bridgman finally refused to allow his name to be used for the prosecution of either of said three suits, and this refusal was made in consequence of the bond given to him by Anna and Franklin, and without such bond he would have permitted Mr. Holmes to proceed with the suits as he desired. After receiving said bond from the Wooleys he ceased to do any act as administrator, and the whole litigation subsequent to that time on the part of the defendant has been by Anna and Franklin A. Wooley and at their expense.

April Term, 1856, judgments of nonsuits in both trespass suits were rendered against Holmes, and executions for costs issued against him. And April Term, 1857, the judgment of the probate court allowing administrator Dwinell's account was affirmed for want of prosecution, and judgment for costs rendered against Holmes, and execution issued. The executions in the trespass suits were paid by Holmes, April 22d, 1857, amounting at that time to $34.90., and July 10th, 1857, he paid the execution in the appeal case, being $26.38.

Upon the report of the commissioner the court, at the September Term, 1862, BARRETT, J., presiding, *pro forma*, rendered judgment for the defendant, to which the plaintiff excepted.

*Butler & Wheeler*, for the plaintiff.

The defendant was guilty of bad faith toward Holmes, the only

creditor, gross neglect of his duty as administrator, and a prostitution of his office entirely to the interests of Franklin and Anna Wooley, which were directly opposed to the interests of the estate he represented, and should be charged with all the estate has lost by reason of his neglect.  Packman's case, 6 Coke 19 ; *Eames' Adm'r*, v. *Creditors*, 4 Vt. 256.

This is the only remedy the creditor can make available against the administrator and his sureties.  *Bank of Orange County* v. *Kidder*, 20 Vt. 519 ; *Probate Court* v. *Chapin*, 31 Vt. 373.

The estate lost one-third of the $550. in notes left by Samuel Wooley Sen., at his decease, and interest thereon, by the neglect and refusal of the defendant to prosecute the Dwinell appeal.

The widow's right to one-third of these notes did not depend at all upon an assignment to her by the probate court during her lifetime. She took by force of the statute of distributions, and her interest vested immediately upon the decease of her husband.  Fuller on Errors, 384, 341 ; 3 Peere Williams 49 ; 4 Bac. Ab. 95 ; 1 Burrow's Rep. 87.

No formal possession by her or her guardian was necessary to maintain the trespass suits.  The setting out by the commissioners was sufficient.  She took the seizin of her husband by appointment of the law.  But if possession was necessary, that taken by Holmes as guardian was sufficient.  4 Mass. 384 ; 1 Wash. R. P. 254 ; *Ib.* 168 § 25.

The lease from Dwinell could not have been made to operate as a bar to either suit.  C. S. 340 §5 ; 1 Wash. R. P. 254.

Nor could the lease from the town of Grafton give any right to the use of the dower, or in any way affect these suits.  *Bennington* v. *McGennes*, 1 D. Chip. 44 ; 6 Vt. 100.

Her administrator might and ought to have recovered one-third of the rents and profits of the real estate from November, 1852, to December, 1854, the time of her decease, the value of which the commissioner reports to be $65. per year.  He neglected and refused because of the indemnity of Franklin and Anna Wooley, the persons of whom it should have been recovered.

This was bad faith to the creditor, and the defendant should be

charged with what he could have recovered in this way, unless he is charged for what he might have recovered in the trespass suits.

*H. E. Stoughton*, for the defendant.

I.   The course pursued by the administrator Dwinell is justifiable upon two grounds.   1st.  When he neglected to institute suits he exercised a sound discretion, and hence could not be made liable.   *Heirs of Holmes* v. *Holmes*, 28 Vt. 765.   And if the report does not show facts sufficient to base the assumption of good faith upon, it will be re-committed.   2d.  The administrator was not bound to prosecute a doubtful claim without indemnity.   *Griswold* v. *Chandler*, 5 N. H. 492 ; *Andrews* v. *Tucker*, 7 Pick. 250.

If Dwinnell could not be made liable, then the defendant, Bridgman, cannot, for his liability for the notes is based upon the assumption of a liability which could have been enforced against Dwinell.   The defendant was not bound to prosecute a hopeless suit, even though indemnified.   *Wyman's Appeal*, 13 N. H. 18.

II.   Neither of the trespass suits could be maintained.   C. S., p. 363 § 11 ; *ib.* p. 378 §§ 4, 15 ; *Cutting* v. *Cox*, 19 Vt. 518 ; *Ripley* v. *Yale et al.*, 16 Vt. 257 ; *Thurston* v. *The Estate of Holbrook*, 31 Vt. 354.

III.   The defendant is not liable for other obvious reasons.

1st.   He had no funds, and the bond offered only covered the appeal from the allowance of Dwinell's account.   2d.   If the bond would cover the trespass suits, it is sufficient to show that they could not have been sustained.   3d.   And there was no bond nor any request to look for assets except through the suits then pending.

ALDIS, J.   The plaintiff as a creditor of the estate of Elizabeth Wooley filed his petition in the probate court, setting forth that the defendant had neglected to file any inventory of the property of the estate and to render any account of his administration, and praying the court to cite him in to render his account, and that he be ordered to pay the debts against the estate including the claims of the plaintiff.   This proceeding was according to the statute.   G. S. chap. 54 § 10 *et seq*.   The defendant appeared and rendered his account stating that no estate of the said Elizabeth ever came to his hands, and that he had made diligent search and inquiry for the same.   Upon this

account or statement a hearing was had, the petitioner producing witnesses to show that the administrator had not used due diligence but had been guilty of fraud in the execution of the duties of his office. The probate court decided that the administrator had been guilty of bad faith and wanting in due diligence, and held him chargeable for the property which he would have received as administrator by the exercise of reasonable diligence and good faith, and ordered him to be charged with the sum of $647. lost to the estate by his bad faith, and that he pay to the petitioner on demand his claims against the estate, and that nothing be allowed the administrator for his services, they having been rendered in bad faith. From this decree and order of the probate court the administrator appealed to the county court. The county court appointed a commissioner to report the facts, and upon his report the hearing is now had. It appears from the report that Samuel Wooley Sen., the husband of Elizabeth Wooley, died in March, 1849, seized of a farm of the value of $2,700. and of good notes of the value of $550. To this result the litigation has come both before the probate court and the commissioner. It is admitted that he owned the real estate. As to the $550. in notes, the widow and heir of Samuel Wooley Jr. claim that Samuel Sen. gave them before he died to his son Samuel Jr. If he did so give them, then Elizabeth would not be entitled to her distributive share of them;—if he did not so give them she was entitled to her share of them, which could not have been less than one-third of them. If the widow and heir of Samuel Jr. wrongfully claimed and withheld them from the widow Elizabeth, she in her lifetime, and her administrator after her death and on behalf of her creditors was entitled to such share. The proof of such a gift would devolve on those who claimed title under it, (Anna the widow of Samuel Jr. and Franklin his son and heir;) and the commissioner says he does not find such gift established by any fair preponderance of proof. This result thus arrived at both in the probate and county courts we must regard as a fact which would have been established always in any just and reasonable litigation, as well by Dwinell, the administrator of Samuel Sen., by Bridgman, the administrator of Elizabeth, as by this plaintiff; and that the claim of the widow and heir was wrongful and untenable.

1. As to the claim as to the dower of Elizabeth Wooley in her husband's farm.

It is conceded that she had the right to dower. Until assignment of dower she was entitled to one-third of the rents and profits of the farm ; after assignment of dower, to the use of the whole assigned to her.

While her son Samuel Jr. lived—viz. from March, 1849, to March, 1852,—he supported her reasonably, and it is admitted by the plaintiff that such support should offset the value of the use of the dower for the same time. From March to November, 1852, the widow and son of Samuel Wooley Jr. supported her, and for that time we see no reason why the use of her dower should not be set off against her support. After that she was supported by her guardian (the present plaintiff,) from November, 1852, to July, 1853, and his account against her estate appears to have accrued in part for such support ;—and up to the time of her death in December, 1854, the plaintiff appears to have been endeavoring to obtain an assignment of dower for her and by suit against Anna and Franklin Wooley, (the widow and heir of Samuel Jr.,) to reach its proceeds.

After the appointment of the plaintiff as guardian it is obvious that the use and possession of the real estate of his ward would belong to him—and that the lease of it previously by the administrator of Samuel Wooley Sen., or afterwards by the town of Grafton, would not impair his right to it. As Anna and Franklin Wooley in fact took the whole use of it to themselves without the assent and against the will of the guardian, they would be liable to him for the value of its proceeds thus wrongfully taken. They knew that the land was set off to the widow as dower at the time of the assignment. Either in the action of trespass or in some other form they were accountable to the guardian for the proceeds of the use of the dower which they had taken. The defendant Bridgman, who was administrator of Elizabeth, must have been fully aware of this. The guardian, after his powers ceased by the death of the widow, urged the defendant to pursue the matter and obtain pay for this wrongful use of her land by Anna and Franklin Wooley. He promised to investigate. The commissioner finds he would have proceeded to obtain redress for the estate he represented, if Anna and Franklin Wooley, the wrongdoers,

Holmes v. Bridgman, Adm'r.

whose interest it was to have him do nothing, so that they could re-
tain the widow's funds in their hands, had not given him a bond to
indemnify him against all acts or omissions to act as administrator.
This bond we can regard only as an instrument to procure him not
to do the duty reposed in him by his office. It was collusion in their
wrongdoing for him to accept it and act upon it. If he did not act,
nobody could. The obligors in the bond thereby secured themselves
from legal prosecution and got for their own use what really belonged
to the estate of the widow, and should have gone to the payment of
her creditors. In this view we do not deem it material to decide
whether the assignment of dower would relate back to the time when
the commissioner set it out and the guardian made entry, so as to en-
able him to sustain his first suit in trespass—though we incline to that
opinion; for the defendant wholly refused to do anything—to take
any measures to secure to the widow's estate what belonged to it.
The commissioner says, after taking the bond he ceased to do any act
as administrator. He allowed Anna and Franklin to grasp the whole
without any respect for the rights of others who had claims on the
estate. He did this because they gave him a bond, that if he would
do nothing, and so help them keep what they had got, they would
stand between him and harm. This conduct of the defendant was
very far from being fidelity to his trust—it was collusion with wrong-
doers in spoiling the estate he was bound to protect.

Had he done his duty he would have collected from Anna and
Franklin the value of the use of the dower from November, 1852, to
December, 1854. Her right to the value of the use of her thirds in
her husband's real estate did not depend upon the assignment of
dower by metes and bounds. Nor could her husband's administrator,
heirs or creditors deprive her of that. And after the appointment of
her guardian all her rights vested in him, and those who took the
proceeds were accountable to him.

The annual value of the dower according to the commissioner was
$65. By this estimate the administrator of Elizabeth Wooley
could have collected of Anna and Franklin something over $130.00.;
or if the estimate be measured by the damages in the trespass suits,
then at least $112.

2. As to the personal property.

The commissioner reports that the $550. in notes belonged to Samuel Sen. when he died, and as we have already said, this result must have been arrived at if any reasonable litigation had been attempted. The administrator of Samuel Sen. by the use of due diligence could have ascertained the facts and secured this property for the estate. For his neglect to do so two reasons are assigned. *First,* that he honestly but erroneously believed that these notes had been given to the son. If the facts reported by the commissioner satisfied us that he honestly and *thoroughly,* and without favor to Anna and Franklin Wooley, investigated the matter, and so had arrived at that conclusion, we should not think he ought to have been held liable for the loss of them. But there are other facts which raise a strong presumption against him, and lead us to a different conclusion, viz : that he was at least wanting in due diligence. He was appointed administrator at the suggestion of the widow and heir of Samuel Jr. He could as well have investigated the matter and ascertained the facts as this plaintiff. He was urged to do so, and as events have since shown, would have succeeded if he had tried. He seems to have relied upon the declarations of Anna and Franklin, whose statements were less to be relied on as they were interested parties. We cannot resist the impression from the facts stated in the report that he allowed himself to be influenced by them to do nothing, which was all they wanted, when his duty required that he should be independent and diligent in pursuing them and reclaiming what they had wrongfully got.

The second excuse offered for him is that he had no funds to enter upon an expensive litigation. But he had the farm worth $2700., and the proceeds of two-thirds of it. Instead of keeping this in his own hands he leased it to the widow Anna and her son Franklin and seems never to have asked for any rent. This looks much more like managing to aid them in their claims, than endeavoring to bring them to the test of a legal investigation. An investigation in the probate court would not have been attended with an unreasonable expense,—at least would seem to have been fully justifiable as a duty to the estate he represented. The farm furnished him with ample security for all his expenses.

When Dwinell, as administrator of Samuel Wooley Sen., offered

Holmes *v.* Bridgman, Adm'r.

his account for allowance, the plaintiff objected to the allowance, be-
cause he did not account for this sum of $550. Had *that* investiga-
tion been then allowed to proceed, we cannot doubt it would have
resulted in charging him with these notes. But here again the inves-
tigation was prevented by the act of this defendant. He took a bond
in collusion with those who wrongfully held the fund to stifle investi-
gation. Thus from first to last we find a persistent effort to avoid a
legal trial. Against those thus unfaithful to their trust, and who
thus collude to stifle all legal investigation of unjust claims, every
presumption is to be made. We think the defendant should be made
chargeable with the third of the $550. of notes which belonged to
Samuel Sen. at his decease. This sum, with interest from March,
1849, belongs to the estate of the said Elizabeth, and at the time of
the allowance of the plaintiff's account (September 10th, 1855) was
more than enough to pay it. The amount chargeable to the defend-
ant for the use of the dower would be more than the other claims of
the plaintiff;—it would be (calling the period two years during which
Franklin and Anna had what they should have accounted for to the
guardian) the sum of $130. with interest from December, 1854.
The plaintiff paid on the 22d of April, 1857, $34.90. on the execu-
tions in the trespass suits, and on the 10th of July, 1857, $26.38.,
the costs in the appeal case. These claims of the plaintiff with in-
terest amount to less than the rents and profits of the dower for which
we hold the defendant chargeable.

We think the decree of the probate court charging the defendant
with an amount equal to the claims of the plaintiff, as above stated,
was correct and should be affirmed. The *pro forma* judgment of the
county court is reversed and judgment rendered that the defendant is
chargeable with loss to the estate of Elizabeth Wooley, deceased,
arising from his want of due diligence and his fraud, for a sum equal
to the account of the plaintiff allowed against said estate, (being
$252.28. with interest from September 10th, 1855,) and the sums
paid by the plaintiff on the executions in the trespass suits, (being
$34.90. and interest from April 22d, 1857,) and the sum paid for
costs in the appeal case, (being $26.38. with interest from July 10th,
1857,)—and that the decree of the probate court ordering the defend-
ant Bridgman to pay the above amounts to the plaintiff be affirmed

with costs. As Bridgman has deceased since this suit has been pending, and Joel Davis has entered as administrator of his estate, he will be ordered to pay the same to the plaintiff out of the estate of said Bridgman. This judgment is to be certified back to the probate court, pursuant to the statute.