R. C. WHITE AND MARY A. WHITE, HIS WIFE, *v.* BARNET S. WAITE.

*Husband and Wife. Acts of* 1867, *No.* 21.

Personal property acquired by a married woman during coverture, by inheritance or distribution, is, by force of No. 21 of the Acts of 1867, whereby it is enacted, " All personal property and rights of personal action acquired by any married woman during coverture, by inheritance or distribution, shall be held by her to her sole and separate use," set apart to her sole and separate use.

The husband's marital right to reduce the wife's property to his possession, does not attach to such property.

The husband and wife may sue jointly *at law,* for the conversion of such property by the husband's creditors.

TRESPASS *de bonis.* The case was referred, and the referee reported the following facts. The plaintiffs were married September 5th, 1868. The plaintiff Mary·A. White was a daughter of Charles B. Colman, who died in 1867. When married, the plaintiffs lived in Woodstock in this state. After the marriage, the said Mary received in money and articles of personal property from her father's estate, $1,122.33, less the revenue tax. Among the articles of personal property so received, was a buggy wagon, a calf, and an old sleigh. The plaintiffs moved from Woodstock to Chester, where they lived on a farm which they carried on upon shares in 1869, and in the spring of 1869, her personal property was taken to that farm. There was an auction in the neighborhood that spring, where farming tools were to be sold. On the morning of the day of the auction, the said Mary handed her husband some money to purchase such things as might be needed to carry on the land, with the understanding that the articles bought with her money, were to be hers. He attended the auction, and there purchased a side-hill plow, land-side plow, harrow, and cultivator, which were needed for cultivating the farm, and for which he paid about $10 of her money. He broke the sleigh, and then exchanged it for an old string of bells, and his said wife let him have some money to purchase a string of new bells. The calf he exchanged for a wagon, and then exchanged the wagon

for a lumber wagon, which was needed on the farm. These exchanges were made with the consent and approval of the said Mary, who was consulted, and authorized such changes and disposals of her property as were made by her husband; it being understood between them, that property purchased with her money, or received in exchange for her property, was to be hers. In the fall of 1869, the plaintiffs bargained with a Mr. French for a farm in Windham, and in the spring of 1870, took a deed running to them jointly. The said Mary paid towards said farm of her money received from the estate of her father, $400, and the plaintiffs gave a mortgage to secure the balance of the purchase-money, some $1,200, which it was expected her husband would pay. The plaintiffs moved on to this farm the latter part of the winter or in the spring of 1870, and took with them the articles of property in controversy, which were needed for the cultivation and management of the farm. The buggy wagon and sleigh bells were used by the plaintiffs as they had occasion to use them when driving in company or separately, and the lumber wagon and other articles named, were used upon the farm. The husband conducted the farm, and made sales and exchanges without speaking of his wife's interest in the property to those with whom he traded. Daniel W. Gleason owned and lived on a farm adjoining the plaintiffs' farm, and near the plaintiffs' dwelling-house, in 1870, and understood that the farm was deeded to the plaintiffs jointly; but he had no knowledge that the said Mary owned in her own right, said personal property. Subsequently he moved to Rutland county. On the 18th of December, 1871, said Gleason sued out a writ against the said R. C. White, and put the same into the hands of the defendant, a deputy sheriff, to serve; and on the 20th of said December, the defendant attached on said writ, among other things, said buggy wagon, lumber wagon, two plows, harrow, cultivator, strings of bells, and a single sleigh. The said Gleason obtained judgment and execution, and said property was sold by the defendant on the execution. Said suit was predicated on a note given for a horse that Gleason sold to said White for $75, and an old wagon worth about fifteen cents, and some other small deal between them, making the note

about $83. Said White used said horse to draw wood, and worked it at home on the farm, and had no property at the time of his marriage. The property sued for was worth $68 when attached. The sleigh attached was purchased and paid for by the said White, in place of the old sleigh broken and exchanged as aforesaid, and was worth $12. This sleigh was purchased and paid for by the plaintiff, R. C. White. The testimony showed that said White had got the property in question repaired from time to time, as he saw fit, and had got the buggy new spoked, and other repairs to the amount of $25.

The court, at the September term, 1873, BARRETT, J., presiding, rendered judgment on the report, *pro forma*, for the defendant. Exceptions by the plaintiffs.

*J. L. Martin* and *Clarke & Haskins*, for the plaintiffs.

Commencing with the case of *Porter et al.* v. *Bank of Rutland et als.* 19 Vt. 410, the whole current of authorities in this state, has been in favor of upholding and protecting the separate estate of the wife against interference on the part of the husband, his heirs or creditors. It is now a well-settled rule of law, that a married woman can hold personal chattels, if purchased with her separate means, or acquired by gift or inheritance, as against those claiming under her husband, either as creditors or heirs. *Porter et al.* v. *Bank of Rutland, supra; Barron* v. *Barron et als.* 24 Vt. 375; *Richardson, admr.* v. *Estate of Merrill*, 32 Vt. 27; *Caldwell, admr.* v. *Renfrew*, 33 Vt. 213; *Richardson* v. *Wait*, 39 Vt. 535; *Clark et al.* v. *Peck et al.* 41 Vt. 145; *Child* v. *Pearl*, 43 Vt. 224. If there was ever any question as to the right of the wife in law, to hold to her own and separate use, free from the interference of any one, property which she may have acquired during coverture, by gift, distribution, or inheritance, it seems to us that the act of 1867, No. 21, settles this question in favor of the plaintiffs. The husband and wife are properly joined in this action. Her property is the meritorious cause of the action, and without the wife being joined, the court could not adequately protect her in the enjoyment of her separate property.

1 Chit. Pl. 33, 34 ; *Estey and wife* v. *First National Bank*, not reported.

But it may be claimed that here was such a reduction of this property to the possession of the husband, as to constitute it his property, and render it liable to be attached and held at the suit of his creditors. Such a position is by no means tenable. *Clark* v. *Wells*, 45 Vt. 4. We understand the rule of law to be, that a husband, in order to reduce the separate property of his wife into his possession, it must not only come within his exclusive control, but it must be evidenced by some positive act on his part, aside from its ordinary use and occupancy, accompanied by a clear intention to make the property his. Schoul. Dom. Rel. 116, 122 ; *Barron* v. *Barron et al. supra ; Probate Court* v. *Niles et al.* 32 Vt. 775 ; *Roberts* v. *Lund*, 45 Vt. 82 ; *Hutchins* v. *Colby*, 43 N. H. 159 ; *Caswell* v. *Hill*, 47 N. H. 407. Again we say, that property acquired by a married woman by inheritance or distribution, since the passage of the act of 1867, becomes absolutely and unconditionally hers, and that nothing short of her own positive act can divest her of her absolute title in the property, and invest it in any other person.

A husband may be the agent or trustee of the wife in the conduct and management of her seperate estate. Hill Trustees, 48 ; *Hutchins* v. *Colby, supra ; Porter et al.* v. *Bank of Rutland et al. supra ; Richardson, admr.* v. *Merrill et als. supra ; Caldwell, admr.* v. *Renfrew, supra.*

The case is barren of any fact tending to show that the property of the wife was ever used by the husband as a means of obtaining credit, or that Gleason was induced to take the note of White upon the credit of the wife's property. But even if the case did show that fact, under the circumstances detailed, it could not affect the rights of the wife to claim and hold to her own use her separate property, derived as it was, from her father's estate, and under the act of 1867.

*A. M. Allbe*, for the defendant.

The act of 1867 in relation to the rights of married women, must, like all other legislative enactments, be subject to a reason-

White and wife *v.* Waite.

able construction, and cannot by any such construction be construed as preventing a married woman acquiring personal property under said act, from disposing of the same by gift or otherwise.

From the facts found, and the entire lack of certain other facts, the defendant was legally justified in presuming that at the time he took the property in controversy, Mary A. White had no title thereto as against her husband's creditors. The act of 1867 refers to property acquired during coverture. There is a clear distinction between acquired and received. The word, acquired, implies title ; and Mrs. White's share of her father's estate was clearly acquired by, and vested in, her, at her father's decease, and before coverture. The different statutes are to be construed together, and are to be enforced according to the intention of the legislature. *Ashley* v. *Harrington, admr.* 1 D. Ch. 348 ; *Hunt* v. *Lee et als.* 10 Vt. 297 ; *Fox* v. *Hatch,* 14 Vt. 340 ; *Dutton* v. *Vt. Mutual Fire Ins. Co.* 17 Vt. 369 ; *Henry* v. *Tilson,* 17 Vt. 479 ; *Catlin* v. *Hull,* 21 Vt. 152 ; *Ryegate* v. *Wardsboro,* 30 Vt. 746. It is not reasonable to suppose that the legislature, by the act of 1867, intended to protect the rights of married women in relation to the property therein mentioned, to any greater extent than their rights were protected in relation to the rents, issues, and products of real estate, and moneys and obligations arising from the sale thereof, by § 18 of ch. 71 of the Gen. Sts.; and such rents, issues, products, moneys, and obligations, by said section, were protected only against the sole debts of the husband ; and the annual products were liable to be attached or levied upon for any debt or liability of the husband, created for the necessaries of the wife and family, and for debts for labor or materials furnished upon, or for the cultivation or improvement of, the real estate ; and the referee has found that the deed of the farm upon which the plaintiffs lived run to them jointly ; and that the indebtedness for which the defendant attached the property in controversy, originated principally by the purchase on the part of R. C. White, of a horse to be used upon the farm ; and for aught that appears, the other trifling articles from which originated the balance of the indebtedness, were also for the cultivation and improvement of said real estate, or necessaries for the wife and family. In *Bent*

v. *Bent*, 44 Vt. 555, it was held that if the husband allows the wife to hold and control property given her during coverture, as her own separate property, for a great length of time, he thereby surrenders and waives the right which the law confers upon him as husband but for such surrender and waiver, to take the wife's personal property, hold and use it as his own. *Albee* v. *Cole*, 39 Vt. 319, and *Child* v. *Pearl*, 43 Vt. 224, are referred to as leading cases in point. By parity of reasoning, the wife, if she allow the husband to hold and control property given her during coverture, for a great length of time, would waive and surrender the right which the statute would otherwise give her ; and indeed it is so intimated in the opinion of Judge PIERPOINT, as reported in the case of *Gill* v. *Cook et al.* 42 Vt. 140.

The opinion of the court was delivered by

Ross, J. The referee does not, in terms, find that the distribution of the estate of Charles B. Colman was subsequent to the marriage of the plaintiffs. He finds that they were married September 5, 1868 ; that Charles B. Colman, the father of Mary A. White, deceased in 1867 ; and that after her marriage, Mary A. White received from her father's estate $1,122.23, less the revenue tax. From these facts, we think that the distribution of Colman's estate may fairly be inferred to have been made subsequently to the marriage of the plaintiffs. The counsel on both sides, in argument, have assumed that such was the fact. We therefore conclude that the distribution of the father's estate was made during the coverture of the plaintiff wife. Hence, the money and other personal property received by her from that distribution, are within the operation and protection of the act of 1867, p. 949, Gen. Sts. While the right to a distributive share in her father's estate became vested in the daughter immediately upon the father's decease, and she became possessed of an undivided portion of the property of the estate, subject to the rights of the administrator to use a part of the same for the payment of the debts and expenses of administration, yet, the particular property did not become absolutely vested in her, until the decree of the probate court making distribution of the estate, became absolute.

Until distribution, she had no right as against the administrator, or other heirs, if such there were, to the specific personal property which she afterwards received from the estate. When the decree distributing the estate became absolute, she, in the language of the act, "acquired" the specific articles of personal property decreed to her, and the right to a personal action for the recovery of the sum of money ordered to be paid to her. The property thus distributed to and received by her during coverture, by force of the statute, was set apart to her sole and separate use. As such, the court of chancery would protect her in the enjoyment of it against both her husband and his creditors. It would not allow the husband to convert it to his use, against her interest and desire. She could allow him to use it, and perhaps give it to him in such a manner as to dispossess her of the right of retaking it. She could allow him to manage it for her, and to convert it into other property. He could act as her agent in all matters pertaining to its management and disposal. *Porter* v. *Bank of Rutland*, 19 Vt. 410; *Caldwell, admr.* v. *Renfrew*, 33 Vt. 213. The right to reduce the wife's property to possession that comes to the husband by virtue of the marital relation, does not attach to property set apart to her sole and separate use. The words, "sole and separate use," would be divested of their entire force and meaning, if the husband were allowed to reduce such property to his possession. Hence, the question whether the plaintiff husband has reduced any of this property to his possession, does not legitimately arise in the case. If the question could be legitimately raised in regard to this property, the facts reported fall short of showing a reduction of this property to the possession of the plaintiff husband. To reduce the wife's property to his possession, the husband must not only take exclusive control of it, but must do some act evincing a clear intention to make the property his as against her and her rights. So long as his possession of the property is subordinate to her rights, it remains her property. This right is personal to the husband, and can be exercised by him alone. Neither his creditors, nor his heirs, or personal representatives, can exercise it for him. *Barron* v. *Barron*, 24 Vt. 375; *Probate Court* v. *Niles*, 32 Vt. 775;

*Roberts, admr.* v. *Lund,* 45 Vt. 82. The defendant is attempting to hold all of the property attached, as the property of the husband. The referee has found that the most of it, when attached by the defendant, was the property of the wife, and, as between the husband and wife, had always been treated and considered her property. Whatever he has done in purchasing, exchanging, or controlling it, he has done as her agent. We entertain no doubt, that if this suit was being prosecuted in equity, it would be the duty of that court, on the facts reported, to decree to the plaintiff wife payment from the defendant, for the property taken which belonged to her by distribution, purchase, or exchange. The only hesitation we have had in rendering judgment on the report for the plaintiffs to recover $68, the value of the wife's property attached and sold by the defendant, has arisen from the fact that the suit is at law. The reported cases in this state, in which husband and wife have joined for the protection of the wife's property against the husband's creditors, have been in equity. In equity, the wife, by a next friend, can proceed against the husband even, to prevent him from converting to his use property appropriated to her sole and separate use. We do not say that a court of equity would under all circumstances, restrain him from converting such property to his use, but it clearly has that power. So, too, a court of equity can restrain the husband's creditors, in a suit in favor of the husband and wife, from taking her property for the payment of the husband's sole debts; or if her property has been taken and applied in payment of his debts, may decree that repayment of the value of the property taken, shall be made to her for her sole use. Ordinarily, the husband can control and appropriate to his use the avails of a judgment at law, recovered in favor of himself and wife. Whether courts at law have the power to order that a judgment in favor of the husband and wife for injury to or conversion of the wife's separate property, shall be paid to and discharged by the wife, is not a question raised in this case, and no opinion is expressed thereon. So far as the defendant's rights are concerned, it is a matter of indifference whether he pays for the wife's property

White and wife *v.* Waite.

which he has wrongfully taken, on a judgment at law, or in equity. His rights are protected whether he pay to the husband, at law, or to the wife, in equity. It is not for him to object to the right of the husband and wife to pursue him at law. The only ground for objection to the maintenance of this suit, is, that the wife's rights may not be so fully protected as they might be in a suit in equity. The objection is one of policy rather than one of right. By rendering judgment in favor of the husband and wife for the conversion of the wife's property, power is given to the husband, and he may divert her property from her sole and separate use to his own use. But he may do the same when she entrusts money to him to invest for her, or to purchase other property. Yet, the law allows him to act as her agent in the collection and investment of her money, and in the sale and purchase of her personal property. If he abuse his trust and divert her property to his use, a court of equity will grant her relief, by decreeing restitution from him or by following the property as trust property. If there were any controversy in this suit between the husband and wife as to which owned the property; or if he were attempting to convert it to his use against her interest and desire, there might be serious if not insurmountable difficulty in adjusting, at law, the respective rights of the plaintiffs, so as to protect the interests of the wife. So long as the wife is content to entrust the control and management of her separate property to her husband by joining him in a suit at law for its recovery, it is not for the court to say that she shall not enjoy that right. It is no more against the policy of the law to allow her to exercise this right, than it is to allow her to employ him as her agent, to receive and manage her separate property. If he should attempt to convert the avails of the judgment to his own use, she is free to apply to the equity side of the court, to restrain him from so doing. We do not discover any valid objection to the maintenance of a suit at law by the husband and wife for the conversion of the wife's property by the husband's creditors. At the present time, when the wife's right to hold separate property has been greatly enlarged, it would be burdensome to her rights, to hold

that she could not maintain suits at law in such cases. The property taken might not be of sufficient value to enable her to bring a suit in equity for its recovery, in which case, there would be a practical denial of justice, if she is not allowed to invoke the aid of courts at law, in which the husband must join in prosecuting the suit. It is also generally more expensive to secure one's rights in equity, than at law. The *pro-forma* judgment of the county court is reversed, and judgment rendered for the plaintiffs to recover $68, with interest from December 18, 1871, and costs.