Sowles *v.* Witters *et al.*

(*Circuit Cour*, *D. Vermont.* July 25, 1889.)

1. DESCENT AND DISTRIBUTION—EFFECT OF PROBATE DECREE.
    H. left a will, of which defendant was executor and S. residuary legatee. S. also made defendant her executor, and complainant, defendant's wife, her residuary legatee. Defendant administered on both estates, and converted many of the assets, taking leases, deeds, mortgages, and assignments of property belonging to or purchased with funds of the estates in his own name, or as executor. Complainant petitioned the probate court to decree to defendant all the assets of H.'s estate, and to decree to complainant all of the residuary estate of S., without finding the amount in defendant's hands under either will, and stating that she accepted the property without inventory, and exonerated defendant from all further liability. The court decreed according to her prayer. *Held*, that the decree was conclusive on complainant, who could thereafter claim nothing except under the decree.

2. SAME—EXECUTOR'S LIABILITY.
    Defendant would thenceforth be liable for only such assets of the estate of S. as he had not converted and become chargeable with at the date of the decree, including leases already executed, and mortgages assigned to him as executor.

**3. SAME—HUSBAND AND WIFE.**

While at the date of the decree complainant, being a married woman, could not personally bind herself by a contract, she was able to dispose of her separate estate, and the decree, founded on her consent, was valid.

**4. SAME—WIFE'S PERSONALTY.**

The possession of the personalty by defendant as executor would not amount to a reduction into possession as husband of complainant, so as to extinguish the latter's title as residuary legatee.

**5. BANKS AND BANKING—STOCKHOLDERS—ASSESSMENTS.**

Defendant, for the purpose of helping a bank, of which complainant was a stockholder, in a financial crisis, loaned it certain securities belonging to complainant, and when complainant was informed of the fact she did not object. She was assured by the bank's officers that if the bank was saved the securities would be returned, and if it failed the avails would be credited on her assessment as a stockholder. The bank failed, and the securities were not returned. *Held*, that she was not entitled, as against other creditors, to set off the value of the securities against her assessment, but was, as to such value, on the same footing as any other creditor.

In Equity.

Bill by Margaret B. Sowles, a married woman, suing by her next friend, against Edward A. Sowles, her husband, and Chester W. Witters, receiver of the First National Bank of St. Albans, to recover the avails of certain stocks and notes, and to have set aside or transferred to her certain leases and a mortgage.

*Henry A. Burt*, for complainant.

*Chester W. Witters, pro se.*

*Edward A. Sowles, pro se.*

WHEELER, J. The defendant Sowles is the husband of the oratrix, who is a niece of Hiram Bellows. He died leaving much real and personal estate, and a will, of which the defendant Sowles was executor, and in which many bequests and devises were made, and Susan B. Bellows, his widow, was residuary legatee. She died leaving a will making nearly the same bequests and devises, and the same person executor, and the oratrix residuary legatee. The executor took possession of the assets of both estates, and managed and disposed of same according to his pleasure. He discharged a mortgage on the Bremmer farm belonging to the estate, and took a new mortgage to himself; he bought the Smalley farm with moneys of the estate, and took the title to himself; he took the title of the Fairfax house to himself, in discharge of a debt due to and for a house belonging to the estate; he bought the Yandro house with moneys of the estate, and took the title to himself; he purchased a mortgage on the American House in Swanton with moneys of the estate, and took a second mortgage on it for a debt due the estate, foreclosed both as executor, and took a quitclaim deed of the mortgagors to himself, for which he paid $20 to shorten the time of redemption and get possession; he purchased a note against Francis and Duclos with funds of the estates; he took 29 shares of Northern Pacific railroad stock transferred in blank, in payment of a debt due the estate; he exchanged some redeemable leases belonging to the estate for others running to himself, and some for others running to himself as executor; of old Chicago

Rock Island & Pacific railroad stock belonging to the estate he exchanged 100 shares for 200 shares of new stock, 100 of which were issued to himself, and the other 100 to him as executor; and he paid and satisfied some of the legacies and bequests. After all these, among other things, had been done by him, he applied to the probate court having and exercising jurisdiction for an order for the settlement of his account, and of notice thereof to all persons interested therein, according to the laws of the state, which was granted, and the notice was given. Whereupon the oratrix appeared and presented this petition to the court:

"*To the Honorable Judge of Probate for the District of Franklin and State of Vermont:* You are hereby requested to decree the amount of real and personal property named in Hiram Bellows' will to E. A. Sowles, executor therein named, according to the terms of said will, without finding any definite amount in said executor's hands; and you are also requested to decree to the undersigned all the residuary portion of real and personal property named in Susan B. Bellows' will, or owned by her, without finding any definite amount in E. A. Sowles' executor's hands, without any inventory or specification of items or articles or estate, and I accept the same without further specification, and exonerate said E. A. Sowles as executor named in said wills from further duty or liability in the premises.

"*New York, March* 30, 1881.          MARGARET B. SOWLES,
"Residuary Legatee Named in Said Wills."

Thereupon, and upon hearing had, the court found and stated of record that the order of notice had been complied with, and decreed payment of the legacies of the will of Hiram Bellows by the executor, and the remainder to the executor of the will of Susan B. Bellows, and stating the petition of the oratrix decreed payment of the legacies of the will of Susan B. Bellows and the remainder of that estate to the oratrix. No appeal was taken by any one from these decrees.

The defendant Sowles became largely indebted to the bank of which the defendant Witters became receiver, and delivered the certificate of 100 shares of Rock Island stock taken to himself to the bank on his indebtedness, which the bank appropriated, and credited to him. Afterwards, while the bank was in distress caused by a run, he delivered the 100 shares of the same stock which he took as executor, as stated, and other 100 shares of the same standing in his name as executor, 10 shares of stock in the National Car Company, standing in the name of the oratrix, and the 29 shares of Northern Pacific stock, to the bank, to aid it in its necessities; and further, afterwards, he mortgaged the American House, the Fairfax house, the Bremmer farm, and the Smalley farm, assigned some of the leases taken to himself and some of those taken to himself as executor, and delivered the Francis & Duclos note to the bank for security of his debt.

This bill is brought to have the avails of these stocks and the note and the receipts from the leases and the leases decreed to the oratrix, and the mortgage set aside in her favor.

The defendant receiver claims that the stocks were delivered to the bank to be applied upon the debt of the defendant Sowles, with the consent of the oratrix. Upon the whole evidence the fact is not so found.

She was a stockholder in the bank, liable to an assessment upon her shares. *Witters* v. *Sowles*, 32 Fed. Rep. 130, 38 Fed. Rep. 700. The stock appears to have been delivered upon the exigencies of the occasion without her knowledge, for the purpose before stated. When the transaction came to her knowledge she appears to have been assured that if the bank was saved those or like stocks would be returned to her, and if it failed the avails would apply on her assessment, and on these assurances to have assented to their retention. The rights of the respective parties to the property involved are to be determined upon substantially these proceedings and facts. In Vermont, these probate courts have exclusive jurisdiction of the settlement of estates, and of the accounts of executors and administrators. R. L. Vt. § 2018; *Adams* v. *Adams*, 22 Vt. 50; *Boyden* v. *Ward*, 38 Vt. 628. In *Adams* v. *Adams*, REDFIELD, J., said:

"It was clearly the intention of our legislature, from the very first, to give the entire jurisdiction of settlement of estates to the probate courts in the same manner and to the same extent that the jurisdiction of other matters of contract, or tort, *inter vivos*, was given to the common-law courts."

Section 2096 provided that "an executor or administrator shall be chargeable in his account with the goods, chattels, rights, and credits of the deceased which come to his possession; also with the proceeds of the real estate sold for the payment of debts and legacies, and with the interest, profit, and income which come to his hands from the estate of the deceased;" and section 2150, that "a debt secured by mortgage with the mortgaged premises belonging to the estate of a deceased person," when not foreclosed in the life-time of the deceased, "shall be personal assets in the hands of the executor or administrator, and administered and accounted for as such." When the defendant Sowles was before the probate court for the settlement of his accounts as executor of each of these wills he was chargeable, at the instance of the oratrix, or any of the legatees, or of any one interested, with all the property and the avails of all property of either estate, including mortgages which he had taken to himself. *Holmes* v. *Bridgman*, 37 Vt. 28. They did not prosecute their right to charge him for any of these things, but he was specially exonerated of record by the oratrix from being charged for any of them, and on her petition acquiesced in by the others, all charges for them were waived and omitted by the court in its decree covering the whole subject of them. This decree, unappealed from, became final and conclusive against any right to charge him for these matters. *Rix* v. *Smith*, 8 Vt. 365; *Probate Court* v. *Vanduzer*, 13 Vt. 135; 2 Redf. Wills, 895. That right to charge him for the property so appropriated to himself was the only remedy those interested in the estate then had for the recovery of it. *Probate Court* v. *Chapin*, 31 Vt. 373. The property of the executor in the assets was a special and limited one, but he had full power of disposition over them, and when he had sold or converted them to his own use the title had passed, and his accountability in this proceeding only remained to those interested as their right of action. Letting the decree which covered this accounting pass without making or

attempting to make him chargeable, by the act of the oratrix and acquiescence of the others, extinguished their right of action and left the avails of that part of the property in his hands, without further liability for them, except as provided by the decree. Brooke, Abr. "Executors," 114; *Fryer* v. *Gildridge*, Hob. 10a, note; *Platt* v. *Sheriff*, Plow. 36; *Woodward* v. *Lord Darcy*, Id. 184. The effect was the same as if the accounting had been prosecuted and he had been charged with this property, or the right to charge him had been disallowed in his favor. No obligation rested on him afterwards in respect to it but to perform the decree as it was made, and left to stand and become absolute. The property taken by the executor to himself was altered by the law at the election of the oratrix and of the others interested in the estate. Id. 186; *Emthorpe* v. *Elvington*, Year Book, 2 Hen. VII. 8. The legatees had, respectively, their rights of action against him personally, and the oratrix had the right, as residuary legatee, to the remainder of the property. *Bellows* v. *Sowles*, 57 Vt. 411; *Weeks* v. *Sowles*, 58 Vt. 696, 6 Atl. Rep. 603. The defendant receiver claims that all right of the oratrix to any part of the estate became extinguished by these proceedings. But she did not exonerate the executor to that extent; neither did the decree. She asked that the residuary portion be decreed to her, and exonerated him "from further duty or liability in the premises." The residue and remainder was decreed to her, and became hers.

This defendant further claims that the executor, as husband of the oratrix, became vested with the right and title to this residue. But he had done nothing in assertion of his right as husband. Being in his hands as executor wrought nothing in that direction. 2 Redf. Wills, c. 5, § 26, subs. 4; *White* v. *Waite*, 47 Vt. 502. Counsel for the oratrix insist that she was, as wife, without power to part with her right to any of the property, or to take or consent to proceedings to divest herself of it. *Merriam* v. *Railroad Co*, 117 Mass. 241. In Vermont, at that time, a wife could not bind herself personally by any contract. *Brown* v. *Summer*, 31 Vt. 671; *Ingram* v. *Nedd*, 44 Vt. 462. But she had, however, full control over the disposition of her separate estate, so far as could be done without creating a personal obligation. *Child* v. *Pearl*, 43 Vt. 224; *White* v. *Waite*, 47 Vt. 502; *Witters* v. *Sowles*, 38 Fed. Rep. 700. The proceedings and decree appear to have been binding upon all, and to have effect upon the property involved, of all. These considerations are to be applied to the several parcels of property as they existed on March 30, 1881, the date of the decrees.

The Duclos and Francis note and the Smalley farm had been bought with moneys of the estate, for which he was chargeable. These were left his property. The Derrick house appears to have been conveyed by license from the probate court in such manner as to leave him chargeable with the avails. He appropriated them and debts due the estate to the purchase of the Fairfax house to himself. He was chargeable for these avails and debts, and the Fairfax house was his. The Yandro house was purchased with moneys of the estate for which he was chargeable, and it was his. He converted the mortgage on the Bremmer farm

to his own use by discharging it and taking another to himself, and foreclosing his own. He was chargeable for the mortgage which had belonged to the estate, and the farm was his. The leases of the farms which were his were taken to himself, and followed his title to the land, and belonged to him. The 100 shares of Rock Island stock which he took to his own name were converted to his own use, and he was chargeable with the value of what he gave for them. They became his. The 29 shares of Northern Pacific stock had not been converted by him. Neither had the other 200 shares of Rock Island stock, which stood in his name as executor. The Willey lease remained in his name and hands as executor. He bought a mortgage on the American House with moneys of the estate, and took another for a debt due the estate, and foreclosed them in his name and right as executor. The quitclaim deed taken to himself to shorten the time of redemption and give possession did not divest the mortgage title. That remained in him as executor. The $20 paid by the executor for the quitclaim deed was involved in his account, and was merged, and the right to it disappeared with that. These were of the residue and remainder of the estate, and the right to them passed to the oratrix by the decree to her as residuary legatee.

The avails of these stocks were retained by the bank upon her consent after she was informed of their transfer. The bank failed, and could not return those or similar stocks to her. The assessment is for the enforcement of the liability of the shareholders to the creditors of the bank. Rev. St. U. S. § 5151. It is enforced by the comptroller and receiver for their benefit. Section 5234. There was no one to agree in their behalf that if the bank failed these stocks should apply on her assessment. The bank held these stocks or their avails at the time of the failure on an understanding which it could not carry out. It was liable to her for them or for their avails. This liability was like that to its depositors, or its other obligations. She seeks to recover the avails of the stocks, and is a *quasi* creditor to their amount on an equality with the other creditors. *Case* v. *Bank*, 100 U. S. 446. The avails of the stocks amounted to $26,034.75. The receiver has collected $40 rent on the Willey lease. She was not a creditor of the bank for this, and this amount should be returned to her; and she is entitled to have the mortgage as to the American House and the assignment of the Willey lease set aside and her title to them quieted.

Other legatees have sought to become parties here with the oratrix, but they have no rights in common with her as residuary legatee, and their motion in this behalf is denied.

The costs in equity cases are within the discretion of the court. And as this decree is in favor of each party in substantial proportions, neither appears to be justly entitled to costs against the other, and none are allowed. Let a decree be entered that the defendant receiver pay to the oratrix $40 out of the assets of the bank in his hands; that the oratrix is a creditor of the bank to the amount of $26,034.75, and that he pay her dividends thereon out of the assets of the bank in his hands at the same rate dividends have been paid to other creditors, before paying

other creditors further, and that she stand equal with the other creditors as to future dividends; that the mortgage of the American House and the assignment of the Willey lease be set aside, and enjoining defendant receiver, and his successors, perpetually, from setting up any claim thereto, and denying the prayer of the bill as to the residue, without costs to either party.