ABER v. MAXWELL.

Opinion delivered October 20, 1919.

1. BANKS AND BANKING—INSOLVENCY—DOUBLE LIABILITY—CALL BY BANK COMMISSIONER.—In an action to enforce the double liability of the stockholders of an insolvent bank, the action of the bank commissioner in levying. assessments is conclusive as to the necessity for the call and the amount thereof.

2. SAME—SAME—SAME—REMEDY OF STOCKHOLDER.—The remedy of the stockholders for an unnecessary or excessive call, is in the chancery court, which supervises the proceedings of the State Bank Commissioner and allows claims and makes final distribution of the assets.

Appeal from Hempstead Circuit Court; *G. R. Haynie*, Judge; affirmed.

*D. B. Sain, T. D. Crawford* and *L. F. Monroe*, for appellant.

1. There was error in refusing to require the complaint to be made more specific. Acts 1913, p. 494. The Bank Commissioner was trustee for the stockholders as well as the bank's directors. The stockholders are entitled, as matter of law, to an accounting from the commissioner. Certainly where he makes an assessment of 100 per cent., they are entitled to know why he does so. There is no presumption that the commissioner could do no wrong. If he makes improper allowances of claims or misuses the bank's funds so as to sacrifice the bank's funds and the stockholders' liabilities, they are entitled to know it. The complaint was demurrable.

2. There was error in sustaining the demurrer to the answer and amended answer; the cause should have been transferred to equity. If the president, Foster, allowed the cashier to recklessly pay overdrafts, and was liable to the stockholders, Foster should have been made a party in equity and affirmative relief granted against the only creditor and the note to Foster canceled. Acts 1913, § 33, p. 482; 60 Cal. 126; 120 Ky. 776; 36 Mich. 263; 7 C. J. 566; 1 Michie on Banks, etc., p. 286; Zane on Banks, etc., 379; Tiffany on Banks, etc., p. 298; 86. Fed. 505.

2. A stockholder may sue in equity the officers and directors for gross negligence resulting loss of corporate assets, where the directors are still in control or the receiver refuses to sue. 3 Michie on Banks, etc., p. 1915; 110 Ark. 39; 4 Cowler 682; 15 Am. Dec. 412. The cause should have been transferred to equity and Foster made a party.

*Graves & McFadden,* for appellee.

1. Motion to make complaint more definite and certain was properly overruled. Acts 1913, p. 494, etc., § § 54-5-6; 130 Ark. 128; 8 Wallace 498.

2. It was not necessary that the other assets of the bank be exhausted before proceeding against the stockholders. 92 U. S. 156; 130 Ark. 128; 94 U. S. 673; 94 *Id.* 680.

3. There was no error in sustaining the demurrer. The action of the Bank Commissioner is conclusive against defendant. 130 Ark. 128; 8 Wall. 498.

4. No error in refusing to transfer to equity. The remedy was at law. 8 Wall. 498; 94 U. S. 673.

McCULLOCH, C. J. The Hempstead County Bank, a domestic corporation doing business at Hope, Arkansas, became insolvent, and on December 17, 1917, the State Bank Commissioner, in the exercise of his authority conferred by statute (Acts 1913, page 462), took charge of the property and affairs of the bank and proceeded to administer the same, and on March 11, 1918, the commissioner issued and published a call on the stockholders for the assessment of double liability imposed by that statute. Appellant was a stockholder, and failing to respond to the call by payment of his assessment, the Bank Commissioner instituted this action against him to recover the amount of the assessment. Appellant appeared by counsel and first filed a motion to require that the complaint be made more definite and certain by setting forth a list of the assets and liabilities of the defunct bank, and, the motion being overruled, an answer

was filed, which contained the following paragraphs relied on here as stating a defense to the action:

"And, further answering, the defendant denies that there was any necessity existing for the said John M. Davis, Bank Commissioner, as aforesaid, to take charge of the affairs of said bank; denies that said bank was insolvent and alleges the truth to be that on account of the carelessness and incompetency of the plaintiff, John M. Davis, Bank Commissioner, or his assistants, the true condition of the affairs of said bank was not discovered at the time the said Bank Commissioner took charge of the affairs of said bank; that the deficit existing in the accounts of the said banking corporation at the time the same was taken in charge by said Banking Commissioner was caused by numerous overdrafts drawn by the Dixie Broom Company of Hope, Arkansas; that said overdrafts had been carried on the books of said banking corporation for a long time prior to June 30, 1916, and had been overlooked by the Bank Examiner in making his investigation; that the overdrafts of the said Dixie Broom Company continued from day to day after June 30, 1916, and that on December 17, 1917, the overdrafts of the Dixie Broom Company had reached the sum of $125,-068.37; that all of said overdrafts were being carried on the books of said bank and had been for a long period of time.

"That under the laws of the State of Arkansas the officers of said bank became liable to the stockholders for the amount of the overdrafts so drawn by the Dixie Broom Company; that W. Y. Foster, president of said bank, without the knowledge or consent of the stockholders of said bank, permitted the Dixie Broom Company to draw money out of said bank on overdrafts, and thereby himself became liable to the stockholders of said bank for the amount of the overdrafts of the Dixie Broom Company; became liable to pay same and did pay same, and that when said W. Y. Foster had paid the amount found to be necessary to adjust the affairs of said bank he paid what he was liable under the law to pay, and the

amount so paid in adjusted the affairs of said bank and the necessity no longer existed to make an assessment of 100 per cent or any other amount against the stockholders of said bank.

\* \* \* \* \*

"Defendant further answering alleges that all the debts of said bank have been paid by the said W. Y. Foster, as he should have done; that the same amounted to less than the amount of the overdraft allowed by the said W. Y. Foster to the Dixie Broom Company, and that they are not liable for any assessment of the value of their stock.

"And further answering the defendant alleges that the claim for which plaintiff is attempting to enforce the penalty of a double liability for stock in said bank, is a claim founded on a note executed by the said W. Y. Foster, president of the Hempstead County Bank, to himself or by said bank after said bank had become insolvent and was in the hands of the plaintiff as Bank Commissioner; that said note was given, or said debt created in due course of business of said bank, and is not such a debt, contract or engagement of said bank as would warrant or justify the plaintiff in making said assessment for its payment."

The prayer of the answer was that the cause be transferred to equity and that the note alleged to have been executed by Foster be canceled. An amendment to the answer was filed, which contained charges of negligence and other misconduct of the directors of the bank in the management of its affairs, and a prayer that Foster and the other directors be made parties, and the prayer for transfer to equity was renewed. The court sustained a demurrer to the answer, and, on the failure of appellant to plead further, final judgment was rendered.

(1) In the case of *Davis, State Bank Commissioner, v. Moore,* 130 Ark. 128, we construed the statute creating the State Bank Department and conferring authority upon the State Bank Commissioner with respect to winding up of insolvent banks, and we decided that in a suit

to enforce the double liability of stockholders, the action of the commissioner in levying assessments was conclusive as to the necessity for the call and the amount thereof, and that the question could not be raised in that suit. We based our conclusion on the fact that the terms of the statute were borrowed from the National Banking Act, which had been thus construed by the Supreme Court of the United States. The first decision of that court was in the case of *Kennedy* v. *Gibson*, 8 Wall. 498, and the decision there rendered has been steadily adhered to. *Casey* v. *Galli,* 94 U. S. 673; *United States* v. *Knox,* 102 U. S. 422; *Bushnell* v. *Leland,* 164 U. S. 684; *Studebaker* v. *Perry,* 184 U. S. 258; *Hale* v. *Allison,* 188 U. S. 56; *Christopher* v. *Norvell,* 201 U. S. 216.

It was contended before the Supreme Court of the United States that the question of the necessity for the call was a matter of judicial cognizance which Congress could not withdraw from the courts and place exclusively within the authority of the Comptroller of the Currency, but the court refused to accept that theory, and held that the comptroller had the power to make the call, and that the necessity for it was conclusive in an action to enforce it. In our own case cited above, we expressly pretermitted a decision of the question whether or not, in an action to enforce the double liability of a stockholder, a charge of fraud and collusion on the part of the Bank Commissioner would constitute a defense. It is unnecessary to decide that question in the present case, for the reason that the answer does not contain any such allegation, either expressly or inferentially. The substance of the answer is that all of the valid debts of the defunct banking corporation have been paid, and that the only asserted claim is a note held by W. Y. Foster, the president of the bank, which he executed for the bank to himself for money advanced in refund of moneys overdrawn by the Dixie Broom Company, and that Foster's claim was not a valid one for the reason that he had wrongfully permitted the overdrafts, and was, therefore, liable to the bank for the amount thereof.

This is no more nor less than the statement in detail of the fact that there was no necessity for the commissioner's call on the stockholders for compliance with the double liability. The answer does not, as before stated, constitute an allegation of collusion between the Bank Commissioner and Foster for the wrongful imposition of this liability on the stockholders for the purpose of paying the money over to Foster in satisfaction of an unjust claim against the bank. It is true the answer alleges that there were no valid unsatisfied claims on the bank at all, but this, too, relates merely to the question of the necessity for the commissioner's call, and it falls squarely within the decision of this court and the decisions of the Supreme Court of the United States on this subject. If, as we have heretofore held, the call of the Bank Commissioner is conclusive of its necessity and propriety in an action to enforce the call, then that necessity can not be inquired into on an allegation that the debts of the bank have in fact been paid, for it is the very thing which the commissioner himself must inquire into and decide before he issues a call.

(2) The remedy of the stockholders for an unnecessary or an excessive call is in the chancery court, which supervises the proceedings of the State Bank Commissioner and allows claims and makes final distribution of the assets.

The decision of the circuit court was correct, and the judgment is, therefore, affirmed.

HUMPHREYS, J., dissents.

HART, J., (dissenting). In the case of *Davis, State Bank Commissioner* v. *Moore,* 130 Ark. 128, the court held that the duty devolved upon the Bank Commissioner in making the assessment of liability of individual stockholders, and that his finding as to the amounts necessary to be assessed was conclusive in an action to enforce that liability. In that case the court recognized that the statute was borrowed from the act of Congress regulating national banks. In construing the act of Congress the

Supreme Court of the United States has said that the general purpose of the statute was to confer upon the creditors of the bank a right to resort to the individual liability of the shareholders to the extent, if necessary, of the whole amount of their stock therein.

Under the acts of Congress and the decisions of the Supreme Court of the United States cited in the majority opinion, the comptroller of the currency is constituted a *quasi* judicial tribunal to determine at what time and what amounts, not exceeding the full liability of the stockholders, it is necessary to collect for them to pay the debts of the bank. It is said that his decision, like the decision of the land department and of other *quasi* judicial tribunals, is open to avoidance by the court only in a direct attack upon it upon the grounds of error of law, fraud, or mistake.

The effect of the holding in the majority opinion is that the decision of the Bank Commissioner can not be reviewed for errors of law committed by him in making the assessment. Here is where I think the opinion is wrong and is contrary to the decisions of the Supreme Court of the United States on the question. In *United States* v. *Knox*, 102 U. S. 422, the court said:

"Although assessments made by the comptroller, under the circumstances of the first assessment in this case, and all other assessments, successive or otherwise, not exceeding the par value of all stock of the bank, are conclusive upon the stockholders, yet if he were to attempt to enforce one made, clearly and palpably, contrary to the views we have expressed, it can not be doubted that a court of equity, if its aid were invoked, would promptly restrain his injunction."

Here clearly the Supreme Court of the United States recognizes that the decisions of the comptroller are open to avoidance by a court in a direct attack upon them in an error of law, fraud, or mistake. Such, too, I think, is the effect of the reasoning of the other cases cited in the majority opinion. Such construction has been placed

upon them by Judge Sanborn in *Deweese* v. *Smith,* 106 Fed. Rep. 438, and by Michie on Banks and Banking, vol. 3, sec. 248 (2 C. B.), p. 839, and The National Bank Act annotated by Bolles (4 Ed.), sec. 57, p. 169.   This makes it necessary to consider whether or not the Bank Commissioner committed an error of law in ordering the assessment.

A demurrer was sustained by the lower court to the answer of the defendants. Therefore this question must be tested by the allegations of the answer, for the demurrer admits the allegations to be true.  According to the allegation of the answer, Foster was the president of the bank and one of the directors thereof.  It is also alleged that the directors of the bank negligently failed and neglected to give attention to or to take any control in the management of the bank and its affairs, but allowed the cashier to recklessly pay overdrafts and dissipate the assets of the bank in making bad loans and that the course pursued by the cashier in this respect was known to the directors; that the cashier permitted the Dixie Broom Corporation to make overdrafts for the period of a year and a half, which finally amounted to the sum of $125,-068.37; that the president of the bank knew the conditions with respect to the overdrafts from time to time as they accumulated and failed to have them corrected; that, after the commissioner took possession of the bank, the president, realizing that he was liable to the amount of these on account of his negligent management of the affairs of the bank, paid all the creditors of the bank, and that the amount so paid by him was less than the amount of the overdrafts; that, after he had paid the debts of the bank and after the Bank Commissioner had taken charge of its assets as an insolvent bank, the Bank Commissioner allowed him to take a note from the bank in the sum of the amounts he had paid to the creditors, and that the assessment ordered by the Bank Commissioner was for the purpose of making the stockholders pay this note. The allegations of the answer bring the case within the

principles of law decided in *Bailey* v. *O'Neal,* 92 Ark. 327. In that case the court held: "Where the directors of a bank knowingly permitted the cashier to pursue for a number of years a reckless course of dealing, the probable consequence of which would be the insolvency of the bank, they will be held liable to the creditors of the bank." Again, in the case of *Bank of Des Arc* v. *Moody,* 110 Ark. 39, the court held:

"Where the cashier of a bank made a number of bad loans, and the directors were guilty of negligence in not managing the affairs of the bank and controlling the action of the cashier, the directors will be held liable, not only to the creditors who are unable to enforce their rights against the bank, but to the stockholders thereof, whose stock was rendered worthless on account of the losses sustained by the bank."

Under the principles of law decided in these cases and under the allegations of the answer, the president of the bank was guilty of negligence in managing the affairs of the bank and was liable for the overdrafts. Hence he could not take the note of the bank payable to himself for the amount of the overdrafts paid by him, and the Bank Commissioner committed an error of law in holding that he could give the bank his note for that amount and in ordering an assessment upon the stockholders to pay it.

The defendant moved to transfer the case to equity and to make the president of the bank a party thereto. This should have been done. It would have avoided circuity of action; and if the allegations of the answer are true, there was no liability upon the part of the stockholders and the lawsuit would have been ended. It is perfectly manifest that if the president of the bank was liable to the creditors of the bank under the statute by reason of his negligently permitting the large overdraft of the Dixie Broom Company, he could not pay the creditors and then recover back from the stockholders the amount so paid.