(107 So. 711)

No. 25314.

CATHERINE PLANTING & MFG. CO. v. POINTE COUPEE TRUST & SAVINGS BANK.

(March 1, 1926. Rehearing Denied March 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Action** ⬯62—Where bank agreed to hold sum for payment of rent to secure purchaser for advances made on crop against landlord's lien, purchaser's action against bank for breach of such agreement held not premature, though note for advances was not yet due.

Where bank agreed to hold sum which it had for tenant's account for payment of rent to secure purchaser of sugar crop for advances made on crop as against landlord's lien, purchaser's action against bank for breach of such agreement *held* not premature, though note for advances was not yet due, where it was then certain that purchaser would lose advances paid and more, and tenant was utterly insolvent.

2. **Guaranty** ⬯85(1)—Where bank agreed to hold sum for payment of rent to secure purchaser of tenant's crop for advances made thereon against landlord's lien, purchaser's action praying recovery of such sum and alleging breach of contract held to state cause of action for breach of contract.

Where bank agreed to hold sum which it had for tenant's account for payment of rent to secure purchaser of tenant's crop for advances made thereon against landlord's lien, purchaser's action against bank for breach of such agreement praying recovery for such sum, and alleging breach of contract and other facts relating to alleged loss therefrom, *held* to state cause of action for breach of contract and not for specific performance.

3. **Banks and banking** ⬯99—Bank may guarantee holding of certain sum for specific purpose, where incident to transaction of legitimate business.

Although ordinarily contracts of guaranty or suretyship or lending bank's credit are not legitimate banking business, bank may guarantee holding certain sum for specific purpose, where incident to transaction of legitimate business.

4. **Banks and banking** ⬯99—Bank's agreement to hold sum to protect purchaser making advances on tenant's crop against landlord's lien held not lending of bank's credit or contract of suretyship, so as to be ultra vires on part of bank.

Bank's agreement to hold sum which it had for tenant's account and to apply it on his rent to protect purchaser of tenant's crop against landlord's lien *held* not a lending of bank's credit or contract of suretyship, so as to be ultra vires on part of bank.

5. **Evidence** ⬯6.

Court may take judicial notice that floods or crevasses along Mississippi river in Louisiana come only in spring and early summer, and danger is over after midsummer.

6. **Evidence** ⬯448.

Where written instrument is ambiguous, testimony is admissible to explain it and prove intent of parties.

7. **Guaranty** ⬯42(1)—Bank's agreement to hold sum for payment of rent to secure purchaser of crops, making advances thereon, against landlord's lien, and to pay sum to purchaser in case of destruction of crop, held to render bank liable in amount required of purchaser to discharge landlord's lien to protect its advances, notwithstanding there was no destruction of crop.

Where bank agreed to hold sum which it had for tenant's account for payment of rent to secure purchaser of tenant's crop for advances made on crop against landlord's lien, instrument mentioning such agreement and providing that in event of overflow of Mississippi or total crop failure bank would pay purchaser of crop instead of landlord *held* to render bank liable for payment of amount purchaser was obliged to pay toward rent to protect its advances, notwithstanding there was no flood or destruction of crop.

Appeal from Twenty-First Judicial District Court, Parish of Pointe Coupee; William C. Carruth, Judge.

Action by the Catherine Planting & Manufacturing Company against the Pointe Coupee Trust & Savings Bank. From a judgment of dismissal, plaintiff appeals. Judgment annulled and rendered.

Albin Provosty, Bouanchaud & Kearney, and J. H. Morrison, all of New Roads, for appellant.

Taylor, Porter, Loret & Brooks, of Baton Rouge, for appellee.

O'NIELL, C. J. This is a suit on an instrument of guaranty for $4,000, issued by the defendant bank. The plaintiff's demand was rejected and the suit dismissed. The plaintiff has appealed from the judgment.

In the beginning of February, 1921, one C. W. Cage applied to O. A. Bourg, manager of the Catherine Planting & Manufacturing Company, for a loan of $6,000, to be advanced to Cage to carry on his farming operations on the Poydras plantation, which he had rented from Albin Major in Pointe Coupee parish. The Catherine Company operated a sugar factory in West Baton Rouge parish, and was in the business of advancing money to sugar farmers and buying their cane. Bourg looked over the Poydras plantation and was satisfied with the prospect and willing to make the loan, provided Cage could arrange to secure the payment of the rent, which was $5,000 a year, and which was protected by a lien on the crop superior to the lien that the Catherine Company would have to secure the payment of the money to be advanced for cultivating and harvesting the crop. Cage applied to the defendant bank for a loan sufficient to pay the rent when due. It was payable on the 10th of November, 1921. Cage had already applied to the bank for a loan of $6,000, which was refused. He applied then for a loan of $5,000, offering, as collateral security, 60 shares of stock of the New Roads Gin & Ice Company, of the par value of $50 a share, and a note for $2,000, secured by mortgage on four lots in New Roads, Pointe Coupee parish. The bank's board declined to make the loan for $5,000, but agreed to loan $4,000. It was understood by the cashier, who handled the transaction for the bank, that the purpose of the loan was to assure the Catherine Company that the money would be forthcoming to pay the rent when due. It was agreed, therefore, between Cage and the bank cashier, that the $4,000 should remain on deposit in the bank, not subject to check, and draw 4 per cent. interest. The note that Cage gave the bank for the loan bore 8 per cent. interest.

Having made the arrangement with the bank, Cage called upon Bourg again, explained how he had arranged to take care of $4,000 of the rent, and assured him that he would be prepared otherwise to pay the remaining $1,000 of rent when due. Bourg was willing to take the risk of the landlord's lien to the extent of $1,000, and consented to advance the $6,000 at the rate of $600 a month, and buy Cage's sugar cane. Thereupon, Cage requested Bourg to let him have $2,000 of the advances at once to meet a pressing obligation. Bourg replied that it would not be safe for his company to advance a large proportion of the $6,000 before the danger of a flood from the Mississippi river had passed, and he explained that, with the $600 to be advanced each month, the debt would amount to $3,200, more than half of the total loan, at the end of the next month. He said, however, that he might let Cage have the $2,000 if the latter could in some way protect him against the danger of flood. Cage called upon the cashier of the bank again and requested him to agree to pay the $4,000 to the Catherine Company in the event of a destruction of his crop by flood. The cashier, not concerned with what disposition should be made of the $4,000 when the time would come for the bank to pay it, acceded to the new proposition. Cage explained that the landlord's lien on his mules and farming equipment would be ample security for the rent if the crop should be destroyed, and that the landlord was not demanding additional security. As the only purpose of having the $4,000 on hand to pay the rent when due was to satisfy Bourg, as

manager of the Catherine Company, neither Cage nor the bank could well object to an agreement on the part of the bank to pay the $4,000 to the Catherine Company instead of the landlord, in the event of a destruction of the crop by flood.

Having so arranged with the cashier of the bank, Cage again called upon Bourg and explained the arrangement. The two called at the bank, on the 11th of February, 1921, to have the agreement confirmed by the cashier, which was done. Bourg then requested the cashier to send him a letter of confirmation; and, on the assurance that it would be sent, signed the contract to advance Cage the $6,000 and buy his cane. On that day or the next, Bourg sent Cage a check for the $2,000 of the money to be advanced. On the 14th of February, 1921, the cashier of the bank sent Bourg the letter of confirmation, approved by Cage, viz.:

"Feb. 14, 1921.

"Mr. O. P. Bourg, Manager Catherine Planting Co., Lobdell, La. Dear Sir: Referring to our conversation while you were in our office on the 11th inst.

"Mr. C. Wall Cage has made arrangements with us to guarantee $4,000 of the $5,000 rent which will become due on November 11, 1921, on the Poydras plantation, which he leases from Mr. Albin Major.

"In accordance with the understanding between you, Mr. Cage and ourselves; in the event of an overflow from the Mississippi river, or a total crop failure, in which event Mr. Cage would not be in a position to ship you sugar cane to reimburse you for the advances which you have made and are to make him to cultivate and harvest the current crop, we will pay you the amount of $4,000 above mentioned on November 11, 1921, after it has been proven to us by you or acquiesced in by Mr. Cage that said amount is due you, due to Mr. Cage's inability to deliver any sugar cane or sufficient sugar cane to reimburse you the amount advanced to him.

"Very truly yours,

"[Signed] J. A. Langlois, Cashier.

"I concur in the above and agree that same is in accordance with my understanding with Mr. O. P. Bourg and the Pointe Coupee Trust & Savings Bank.

"[Signed] C. Wall Cage."

There was no crevasse or overflow of the Mississippi river that year.

It appears that Cage and the bank cashier were under the belief that the rent would be due on the 11th, though in fact it was due on the 10th of November, 1921; but that is a matter of no importance. The note which Cage gave the bank for the $4,000 was made payable on the 11th of November, 1921. On the 10th, the day the rent fell due, Cage called at the bank and asked for the $4,000. Meanwhile the collaterals which Cage had pledged to the bank to secure the payment of his note had declined in value below $4,000. The cashier declined to pay Cage the $4,000, contending that the bank had not made a loan to Cage, but had merely guaranteed the Catherine Company against loss by flood to the extent of $4,000. Cage spent several days trying to persuade the cashier and other officers of the bank to let him have the $4,000, but in vain. Meanwhile, of course, Major was clamoring for his rent, objecting to the shipments of the sugar cane to the Catherine Company, and threatening to seize the crop in the field and the proceeds of what had been shipped to the Catherine Company. On the 25th of November, Major sued Cage for the rent and obtained a writ of provisional seizure, which the sheriff undertook to levy upon the sugar cane in the field, upon the proceeds of what had been sold to the Catherine Company, and upon the live stock and farming implements belonging to Cage. He appealed to Bourg to pay the rent; but it was then so apparent that the proceeds of the crop would hardly pay the amount advanced by the Catherine Company and the cost of harvesting that Bourg refused to advance the rent. Finally, the matter was settled, by Cage's turning over his seed cane, live stock, and farming implements to Major for $1,750, and by the Catherine Company's paying Major the balance due on the rent, $3,250. At the same time Cage gave the Catherine Company a written assignment of his claim

against the bank for the $4,000, and Major relinquished in favor of the Catherine Company whatever interest he had in the $4,000 held by the bank.

Before answering this suit, the bank filed a plea of prematurity and an exception of no cause or right of action. Both pleas were overruled.

[1] The plea of prematurity was based upon the two propositions: First, that Cage had not finished delivering his crop to the Catherine Company when the suit was filed; and, second, that the note which Cage had given the Catherine Company for the debt of $6,000 was not yet due. We agree with the district court that the plea of prematurity was not well founded. The obligation of the bank to pay the $4,000 on the rent—if there was such obligation—was past due when the suit was filed. It was as certain then as it was afterwards that the Catherine Company would lose the $3,250 paid on the rent, and more, for the crop was plainly not sufficient to pay the amount which the Catherine Company had already advanced, and Cage was utterly insolvent. The fact that the $6,000 note which Cage had given the Catherine Company for the advances was not yet due did not withhold the Catherine Company's right to sue the bank for the bank's breach of its obligation—if there was such obligation—to guarantee the Catherine Company against having to pay Cage's rent.

The exception of no cause or right of action was based upon four distinct propositions, viz.: First, that the suit was for specific performance of the alleged obligation of the bank to pay the $4,000, whereas the only appropriate suit would have been an action for damages for breach of contract; second, that the suit was on an alleged contract to pay the debt of a third person (Cage), and that such a contract could not be enforced unless it was in writing and proven beyond all doubt; third, that it was not alleged in the petition that the conditions on which the guaranty was made had happened; and, fourth, that a contract of suretyship or guaranty on the part of a bank was ultra vires.

[2] Taking up the first proposition, there is no allegation in the petition to characterize this suit as an action for specific performance of a contract. The prayer of the petition is that the defendant be condemned to pay to the plaintiff $4,000, with legal interest from the 10th of November, 1921. The breach of contract is alleged, and so are all other pertinent facts relating to the alleged loss.

As to the second proposition, it is sufficient to say that plaintiff did sue on a written contract, and did propose to prove it and its breach by competent evidence.

The third proposition is very much of a begging of the question, for plaintiff's contention was and is that the bank's guaranty to pay $4,000 of Cage's rent was not subject to the condition that the river should overflow or the crop fail.

[3, 4] The fourth proposition is true as a general rule, but subject to qualification. Making contracts of guaranty or suretyship, or lending the bank's credit, is not legitimate banking business. Morse on Banks and Banking (5th Ed.) vol. 1, p. 144, § 65. The bank's guaranty in this case, however, was not a lending of the bank's credit or a contract of suretyship in its true sense. The bank's obligation was merely to hold the $4,000 which it had for Cage's account, and to apply it on his rent to protect the Catherine Company against the landlord's lien. A bank may give a guaranty as an incident to the transaction of legitimate banking business, particularly when the bank holds a fund sufficient to protect its guaranty. 8 C. J. 595; Michie on Banks and Banking, vol. 1, p. 681, § 99.

The ruling on the exception of no cause or right of action was correct.

[5-7] On the merits of the case, the bank's contention is that its only obligation to the

Catherine Company, as expressed in the cashier's letter to the manager of the company, was to pay the $4,000 to the company in the event of an overflow of the river and consequent destruction of Cage's crop. That is the same as to say that the second paragraph of the letter, saying that Cage had arranged with the bank to guarantee the payment of $4,000 of his rent, was superseded by the third paragraph, saying that the bank would pay the $4,000 to the Catherine Company in the event of an overflow of the river or failure of the crop.

We agree with the district court that the letter in dispute is somewhat ambiguous, and that testimony was therefore admissible to explain it and prove the intent of the parties. The best proof or test of the ambiguity is not that the plaintiff interpreted the letter one way and the defendant another, but that the district judge thought that the defendant's interpretation was correct, and we think that the plaintiff's is.

Cage and Bourg testified that their understanding with the cashier of the bank was exactly what the letter says; that is, first, that the bank held the $4,000 to guarantee or protect the Catherine Company against the landlord's lien to that extent; and, second, that, in the event of an overflow of the river or destruction of Cage's crop, the bank would pay the $4,000 to the Catherine Company instead of the landlord.

The bank cashier testified that the only obligation of the bank, as expressed in his letter, was to pay the $4,000 to the Catherine Company in the event of a flood or destruction of the crop. But that interpretation ignores altogether the second paragraph of the letter, or implies that it was superseded by the promise in the third paragraph to pay the $4,000 to the Catherine Company in the event of a flood or destruction of the crop.

When the cashier made the transaction, he made out a memorandum or slip, from which he made the entry in the books of the bank. In that memorandum, contemporaneous with the transaction itself, the cashier expressed his understanding to be that his letter to Bourg guaranteed Cage's rent. The memorandum reads thus:

"Pointe Coupee Trust & Savings Bank, New Roads, La. Credit trust funds on deposit. Our letter 2/14/21 to O. P. Bourg. *guaranteeing rent C. Wall Cage, $4,000.* Attested 2/14/21." (The italics are ours.)

There is another circumstance tending to convince us that the cashier's intention, as expressed in his letter to Bourg, was to hold the $4,000 as a guaranty to pay the rent, and to that extent protect the Catherine Company against the landlord's lien, if the river should not overflow or the crop be not destroyed. In the second paragraph of the cashier's letter to Bourg, saying that Cage had arranged with the bank to guarantee the payment of $4,000 of the rent, it was said that the rent would be due on the 11th of November, although in fact it was due on the 10th. In the third paragraph of the letter, where the bank promised to pay the Catherine Company "the amount of $4,000 above mentioned" in the event of a flood, it was said that the payment would be made on November 11th, the very day when the rent would be due, according to the cashier's belief. If the only obligation of the bank was to hold the $4,000 to protect the Catherine Company against the danger of an overflow of the river, why hold it until the 11th of November? It is a matter of common knowledge, subject to judicial observance, that floods or crevasses along the Mississippi river, in this state, come only in the spring and early summer. After midsummer the danger is over. There was therefore no reason whatever for the cashier to stipulate in his letter that the bank would withhold the $4,000 until the 11th of November, unless the purpose was to guarantee the payment of the rent, supposed to be due on

that date, as expressed in the second paragraph of the cashier's letter.

In his testimony, the cashier, explaining the transaction with Cage and Bourg, virtually admitted that the intent and purport of his letter to Bourg was to guarantee the payment of Cage's rent to the extent of the $4,000. Here is what he said:

"On account of the business which Mr. Cage had given us, I felt that we ought to do all that we could to help him out, and it was then that the proposition of guaranteeing $4,-000 on account of the rent which he would owe Mr. Albin Major for the use of Poydras plantation was taken up, and we agreed to make that guarantee, as per letter which was addressed to Mr. O. P. Bourg, manager of the Catherine Planting & Manufacturing Company. This letter sets forth exactly the understanding had between Mr. Bourg, Mr. Cage, and ourselves."

Our conclusion is that the bank is answerable to the plaintiff for the bank's breach of its guaranty, on the faith of which guaranty plaintiff entered into the contract with Cage. But the liability is limited to the amount that plaintiff lost and would not have lost but for the bank's breach of its guaranty. If the bank had fulfilled its guaranty, by allowing the $4,000 to be paid on the rent, the plaintiff would have had to put up only $1,000 to protect its claim for the money already advanced. By the bank's breach of its obligation, the plaintiff was compelled to put up, and actually lost, $3,250 to protect its claim for the money already advanced. The bank is therefore liable for the difference, $2,250.

It is argued by the learned counsel for appellant that the latter is entitled to recover the whole $4,000 because of Cage's assignment of his claim to the Catherine Company on the 25th of November, 1921, when the Catherine Company paid the balance of $3,-250 due on the rent. At that time, the $4,000 note which Cage had given the bank for the loan was past due, and, aside from the obligation which the bank owed the Catherine Company on the contract of guaranty, had the effect of extinguishing by confusion the debt due by the bank to Cage. Cage could not have drawn the $4,000 from the bank, or had the bank pay it on his rent, without thereby incurring a corresponding obligation on his part in favor of the bank; and Cage's assignment to the Catherine Company could not and did not confer upon the Catherine Company a greater right than Cage had or a greater right than the Catherine Company already had.

The learned counsel for appellee argue that the doctrine of confusion which we have mentioned should defeat this suit. Perhaps so if Cage were the plaintiff in the suit, but not so as to the Catherine Planting & Manufacturing Company. The bank owed Cage nothing more than Cage would have owed the bank immediately if the bank had let Cage have the $4,000 or had paid it on his rent. But no such corresponding obligation would have been incurred by the Catherine Company in favor of the bank if the bank had fulfilled its guaranty to see that the $4,000 would be paid on the rent.

The judgment appealed from is annulled, and it is ordered, adjudged, and decreed that the plaintiff, Catherine Planting & Manufacturing Company, recover of and from the defendant, Pointe Coupee Trust & Savings Bank, $2,250, with legal interest from the 25th of November, 1921, and the costs incurred in both courts.