CITIZENS' BANK OF WAYNESBORO, GA., v. HIBERNIA BANK & TRUST CO.

——

(March 7, 1932. Opinion and Decree.)
(April 4, 1932. Rehearing Granted.)
(April 18, 1932. Opinion and Decree on Rehearing.)
(April 25, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

——

John D. Miller, of New Orleans, attorney for plaintiff, appellee.

Quintero & Ritter, Henry & Cooper and A. M. Suthon, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. This is a suit by the Citizens' Bank of Waynesboro of Waynesboro, Ga., against the Hibernia Bank & Trust Company, as tutor of the minor William A. Wilkins, Jr., for $1,000, the amount of an assessment levied under the banking laws of the state of Georgia against stock in the plaintiff bank standing in the name of Mrs. Emma Couturie Wilkins, the deceased mother of the minor, William A. Wilkins, Jr.

The defendant bank, after filing an exception of no cause of action, which was referred to the merits, answered, attacking the constitutionality of the Georgia statute, under which the assessment was levied, as contravening section 10 of article 1 of the Constitution of the United States, and by denying that the Georgia statute could have any extraterritorial effect.

There was judgment below in favor of plaintiff, as prayed for, and defendant has appealed.

In this court the defendant filed an exception of no cause of action based upon the allegation:

"(1) That the assessment, which is the basis of this suit, was illegally issued, for the reason that at the special meeting of stockholders, held on October 23, 1926, the quorum required by law was not present, striking the proceeding of said meeting and the assessment levied as a result thereof with nullity.

"(2) That plaintiff has not proven the contracts, debts and engagements of the allegedly insolvent bank but relied solely on the right of recovery from defendant on the proof of the arbitrary assessment and the laws of the State under which it assumed to act, and that the conditions of defendant's liability for a specific sum do not lawfully appear from the evidence in the record."

The right of the defendant-appellant to raise the issues presented by the exception of no cause of action filed in this court is strenuously contested upon the ground that the questions presented by this pleading

were not considered below, and we are of opinion that the objection is well founded. Shalley v. N. O. Public Service, Inc., et al., 159 La. 519, 105 So. 606.

It was conceded that the defendant bank represents the minor, as his tutor, and that the stock, against which the assessment has been levied belongs to the minor. Consequently, if there be any liability, judgment should properly go against the defendant bank, as tutor.

Mrs. Wilkins purchased five shares of stock of the plaintiff bank on May 27, 1911, and another five shares on October 3, 1911. On the 23rd day of October, 1926, at a special meeting of stockholders an assessment of 100 per cent was levied against all stock outstanding, including that owned by the Wilkins minor. This action was taken upon the authority of an act of the Georgia Legislature of August 16, 1919 (Laws 1919, p. 135). At least, there is no proof of any other Georgia statute in the record. Defendant's counsel contends that the assessment must be justified under the law of 1919, or not at all, for the reason that our courts do not take judicial cognizance of the laws of the other states of the Union.

Our learned brother below disposed of this point by saying:

"Until it be shown that there was no law in effect at the time that Mrs. Wilkins became owner of the stock, the court must presume that the statute pleaded, the existence of which law is shown by the Supreme Court of Georgia in the case of Toombs v. Citizens' Bank of Waynesboro, rendered September 24, 1929, and reported in 169 Ga. 115, 149 S. E. 645, in which the Supreme Court of Georgia held that this identical law has been the law of Georgia long anterior to the chartering of this plaintiff bank and long anterior to the issuance of the stock to Mrs. Wilkins."

We believe this view to be erroneous. In Taylor, Bank Commissioner, v. Terzia, 171 La. 1045, 132 So. 781, 783, reliance was placed upon two decisions of the Supreme Court of Arkansas to show that the action of the state bank commissioner, in levying an assessment on defendant, was conclusive as to the necessity for the amount of the assessment [Davis v. Moore, 130 Ark. 128, 197 S. W. 295; Aber v. Maxwell, 140 Ark. 203, 215 S. W. 389]. The court held that, since the decisions of Arkansas had not been offered in evidence in the court below, they could not be regarded as evidence, because "the interpretation as well as the language of the laws of a sister state must be proved as a fact in a case; otherwise we cannot consider such an interpretation."

But it is said the law of 1919 may with constitutional propriety apply to a stockholder who acquired her stock in 1911. Without considering this troublesome question, we will assume, arguendo, that it does, and that the assessment was levied in conformity with its terms. The next question is the effect to be given the law in this jurisdiction.

In Corpus Juris, vol. 14-A, section 1923, verbo "Corporations," the rule is thus stated:

"Unless authorized to do so by statute the Courts will not enforce a cause of action vested in a foreign corporation against one of its directors where the liability of the director is based not on contract nor principles of the common law, but on a statute of the state where the corporation is domiciled."

The law on the subject in Louisiana provides that shares in banking associations or savings banks are personal property, and that no stockholder of the company

shall be held responsible for more than the unpaid portion of the purchase price of his stock. Act No. 179 of 1902, sec. 10. The Revised Statutes, section 282, provides:

"The shares of the banking companies shall be 'personal property, and shall be transferable upon the books of the same, in such manner as the by-laws may direct; but no shareholder therein shall be liable for its debts and contracts to a greater amount than the whole of his shares therein. * * *"

The General Corporation Law of Louisiana, Act No. 250 of 1928, sec. 19, par. 1, reads:

"A subscriber to or holder of shares of a corporation formed under this Act shall be under no liability to the corporation with respect to such shares, other than the obligation of complying with the terms of the subscription therefor, and said obligation shall continue whether or not his rights or shares have been assigned or transferred; but one who becomes a shareholder in good faith and without knowledge or notice that the shares he acquired had not been fully paid for, shall not be liable to the corporation with respect to payment for such shares."

There is, therefore, no special statutory authorization in this state. but, on the contrary, the policy of our law in respect to the subject under discussion is quite different. It is elementary that the laws of the other states of the Union can have no extraterritorial effect, proprio vigore, and no recovery can be had in this state upon an obligation imposed by statute in another state, because, to enforce a liability created solely by the law of another state, would be to give to the foreign law the same force and effect as though it were a law of the state.

It is otherwise with respect to foreign laws, which enter into and form part of contracts. Such laws will have the same effect in every jurisdiction, so far as the parties to the contract are concerned, because the law forms a part of the contract and "travels with it, wherever the parties to it may be found." Ogden v. Saunders, 12 Wheat. 213, 259, 6 L. Ed. 606. In such case the contract between the parties is enforced and not the foreign law, except in so far as it may be said to form a part of the contract.

What, then, is the nature of the obligation which is sought to be enforced here? Is it contractual, or statutory?

The purchaser of stock in a corporation must, as a matter of course, hold his stock subject to such laws as may be in force at the corporate domicile, and it is said that, in buying stock, a contract between the corporation and the stockholder is entered into. On the other hand, it is contended that the usual elements of a contract are lacking in such transaction—the aggregatio mentium is not present—nor, in this case, has there been an express or tacit agreement to the effect that defendant's ancestor shall be liable up to 100 per cent of the par value of the stock in the event of insolvency. The liability in such cases, the argument proceeds, is simply incidental to the ownership of the stock, and purely statutory, the stockholder being liable for the debt of a corporation, however it may accrue, whether from the breach of a contract, or from the commission of a tort, not by reason of contract, but under a statute so declaring. The weight of authority, however, it is conceded, supports the view that the liability of the stockholder is contractual. A very respectable minority, however, adheres to the opposite view.

See the well-considered case of Crippen, Lawrence & Co. v. Laighton, 69 N. H. 540, 44 A. 538, 46 L. R. A. 467, 76 Am. St. Rep. 192, and authorities there cited.

Counsel for plaintiff in the instant case cites the following from Taylor v. Terzia, supra, as indicating that our Supreme Court has aligned itself with the majority:

"The liability of the defendant as a stockholder in the Citizens' Bank of Pine Bluff must be determined by the laws of Arkansas. That state, by its laws, authorized the creation of the bank, with certain definite powers and obligations; and, when defendant, a citizen of this state, became a stockholder therein, he entered into certain contractual obligations depending upon and subject to those laws so far as they do not violate the statutes or settled policy of this state."

The result in the Taylor case was to deny recovery to the Arkansas Commissioner of Banks, who sought to collect an assessment levied in Arkansas against the defendant in Louisiana. But, whatever may be the fair meaning of the excerpt quoted, and whether the minority or majority view is the proper one, certainly it would be going much further than any of the decisions cited to say that· a contract entered into in 1911 included a statute passed in 1919, so as to make the then non-existent law a part of the contract between the ˙ parties as agreed upon in 1911. In volume 3, Ruling Case Law, we find the following expression (section 45, verbo "Banks," page 418):

"Persons becoming stockholders of a corporation are bound by the provisions of the statute wherein the corporation was formed existing at the time of the acquisition of their shares."

It is not shown that, at the time the defendant's ancestor purchased the stock, there was any law in the state of Georgia imposing the liability which is sought to be enforced here. Consequently, there could have been in the contemplation of the contracting parties no intention to contract with reference to a law not in existence at the time.

It seems perfectly obvious that, whatever may be the effect of a statute passed subsequent to the purchase of stock as affecting the rights of a stockholder, whatever change is brought about in so far as his rights and obligations are concerned, it does not result from a contract, since, at the time the contract was entered into, the statute was not in existence. To say that subsequent statutory enactments form part of the contract created by reason of the purchase of stock is inconsistent with the primary requisite of conventional obligations, consent of the parties. If there be read into the contract, not only the existing laws, but all future laws which the state of the domicile of the corporation may see fit to enact, there could be no contractual certainty, or stability, since the rights and obligations of the contracting parties would be the subject of constant amendment and alteration.

The question of whether the effect of subsequent legislation would be such as to impair the obligation of contracts, with the result that the legislation would be unconstitutional, is another question with which the present discussion is not involved, for the legislation may be valid and effectual and yet the obligations and duties it imposes not contractual, but statutory.

Our conclusion is that the cause of action underlying this suit is based upon a stat-

ute of Georgia which is repugnant to the settled public policy of this state, and that, to permit a recovery, would necessitate the recognition of the Georgia statute as having the force of law in this state.

For the reasons assigned the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of the defendant, Hibernia Bank & Trust Company, as tutor of the minor William A. Wilkins, Jr., and against the plaintiff, Citizens' Bank of Waynesboro, of Waynesboro, Ga., dismissing plaintiff's suit.

## UPON GRANTING A REHEARING IN PART

A rehearing is granted limited to a consideration of whether the decree formerly handed down by us should be amended so as to non-suit the plaintiff, and limited further to the presentation of the issue upon briefs and papers now on file or which may be filed on or before the 10th day of April, 1932.

## ON REHEARING

PER CURIAM. The original decree rendered by us is recalled and it is now ordered, adjudged, and decreed that there be judgment in favor of the defendant, Hibernia Bank & Trust Company, as tutor of the minor William A. Wilkins, Jr., and against the plaintiff, Citizens' Bank of Waynesboro, of Waynesboro, Ga., dismissing plaintiff's suit as in case of non-suit.