## RECONSTRUCTION FINANCE CORPORATION et al. v. RAWLINGS.

### No. 7433.

Circuit Court of Appeals, Fifth Circuit.
March 22, 1935.

Rehearing Denied April 13, 1935.

Anna Judge Veters, of New. Orleans, La., for appellants.

Sam C. Cook, of Clarksdale, Miss., and S. E. Morse and W. H. White, both of Gulfport, Miss., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

## HUTCHESON, Circuit Judge.

Plaintiff's suit was in equity for a set-off, and to redeem collateral held in pledge. His bill admitted that the First National Bank in Gulfport, of which he was receiver, owed the defendant as assignee of the Canal Bank & Trust Company, a Louisiana state bank, $13,067.77, fully secured. It alleged that the Canal Bank was the owner of the 256 shares of the Gulfport Bank in the name of Wendell, and as such owed an assessment of $6,290.35. Tendering the difference, it prayed for an order of discharge from the debt, and for the delivery up of the note and collateral. Defendant's exception of no cause of action, and to the nonjoinder of the Canal Bank, were overruled. Answering, it admitted that the Canal Bank did, as alleged, advance the funds with which the Wendell stock was purchased, but, alleging it to be beyond the powers of the bank to purchase and own national bank stock, it denied that the bank did or could in law become a shareholder as alleged, or was, or could be, liable for an assessment. Plaintiff then amended his bill to allege that the Canal Bank was in liquidation, and to make its liquidators parties defendant. They answered, denying the bank's liability for the assessment. The advance of money for, and the issue to Wendell of, the shares came about in this way. In May, 1931, the First National Bank of Gulfport found itself in difficulties and obliged to reorganize. Mr. Berry, first vice president of both the original and the successor Gulfport banks, approached the Canal and Hibernia Banks, and the Union Indemnity Company, with all of which the Gulfport Bank had for a long time done business, for subscriptions to the reorganized bank. Unwillingly, but at last, on the understanding which was not carried out, because of continuing hard times, that the New Orleans banks were not interested in buying stock in banks, and would expect the Mississippi group to relieve them of the stock within a reasonable time, it was agreed that $36,000 would be subscribed, the stock to be issued to their nominees. In transmitting its part, Bandi, who acted for the Canal Bank, wrote: "I enclose cashier's check for $8000, covering our share of the purchase of Gulfport. I believe it is understood that the Gulfport group is to furnish us with a repurchase agreement in connection with this stock." He testified that on account of their friendly relations the New Orleans banks were interested in doing what they could to help out; that they were willing to lend money to the directors of the Gulfport Bank, but objected to buying its stock; that he never considered the Canal Bank as having an investment in the bank stock, but always considered they were carrying it for some one else; that the stock had always been in the name of Wendell, and the bank never held itself out as owner of Gulfport Bank stock. In the District Court the defendant made three contentions; that the bank did not in fact purchase the stock; that it did not in law do so, because to buy national bank stock and become liable for an assessment on it was ultra vires as beyond the bank's granted power and against the public policy of the state of Louisiana; and, third, that if it did become a stockholder and liable as such, its liability on the assessment was not to the Gulfport Bank, but to its creditors, while the liability of the bank was to it, wherefore mutuality was lacking.

The District Judge thought differently. He found the bank to be a stockholder and liable on the assessment, and that assessment and stock liability could be offset. This appeal is from the decree entered on these findings. Here appellants insist: (1) That since the stock was acquired not in the way of business of the bank, but as an accommodation, and it is contrary to the public policy of the state of Louisiana for its banks to subject themselves to liability for stock assessments, the act of taking the stock was ultra vires and will not support an assessment; (2) that if the bank can be held to the assessment the offset cannot be allowed, because the claims sought to be offset are not held and owned in the same right.

There is a great deal to be said for appellee's position that the rule which prevents a stockholder from offsetting in his favor his assessment liability against a debt due him by an insolvent bank does not work both ways to prevent a receiver of an insolvent bank from collecting by an equitable offset an assessment due it by a stockholder who is himself in liquidation.

In an exhaustive note to Reimers v. Larson, 40 A. L. R. 1177, the views entertained in different jurisdictions under different statutes, their resemblances and conflicts, are collected and pointed out. The rule correctly stated there in regard to stockholders in national banks is that when

sued on his assessment by the receiver of a bank a stockholder may not offset against it debts due him by the bank, since this will prefer the stockholder over other creditors. In Ball Electric Light Co. v. Child, 68 Conn. 522, 37 A. 391, a stockholder of a public service corporation was denied the right to offset against his assessment liability a debt the corporation owed him. It was held that a stockholder liable to assessment is not a debtor to the corporation, or to the creditors, but a guarantor of their debtor, the corporation, and that when sued as such he cannot offset a debt his principal owes him. Other cases thus state the reason for the rule; stock liability is a fund for distribution among creditors; to permit a stockholder to offset his assessment with an indebtedness due him by the bank would be, by paying him in full, to prefer him out of the fund over creditors who get only partial payment. Lauraglenn Mills v. Ruff, 57 S. C. 53, 35 S. E. 387, 49 L. R. A. 448. The grounds advanced in some of the cases, that there is no mutuality because the debts are not due in the same right, and in a few, that the basis of the liability on assessments is not contractual [1] but statutory, while that of the bank's debt is, are but makeweights. The real reason is that it is inequitable to permit a stockholder, who has to the extent of his liability guaranteed the creditors against loss, to use offset to come in ahead of them. Where the shoe is on the other foot, and bank and stockholder are both insolvent, but the stockholder has security for the bank's debt to him, to deny the offset would, it seems, be not to prevent, but to work, injustice. The cases dealing with this situation are few, for it is not often that stockholder and bank stand circumstanced as do these here. Only one such reported case has been called to our attention. We have found few others. In all of them set-off has been allowed. In one, King v. Armstrong, 50 Ohio St. 222, 34 N. E. 163, the set-off allowed was not to the full amount of both claims, but only to the extent of the stockholder's proportional liquidation dividend. In Markell v. Ray, 75 Minn. 138, 77 N. W. 788, 789, 791, an equitable set-off was effected, not only to the extent of the dividend, but completely,

claim against claim, the court saying: "As Bell and the temple association are both insolvent there is no reason why a court of equity should favor or prefer the creditors of the one to the injury of the creditors of the other. The doctrine that equity is equality should be applied when no other rule intervenes to prevent the application. * * * The court should set off claim against claim, dollar for dollar."

What was said and done in the long litigation between Witters, receiver of a failed national bank, and Mrs. Sowles,[2] illustrates very well the point that while equity will not allow assessment liability to be offset against debt, where it effects a preference, neither will it deny offset when to deny will. In Witters v. Sowles (C. C.) 32 F. 130, 138, the claim of the stockholder to the right to offset assessment against indebtedness due by the bank was thus denied: "The claims are not in any sense mutual. The claim of the executor, if he has any, is against the bank. The assessment never was due to the bank, and does not belong to it. The assessment belongs to the creditors of the bank, and is recoverable by the receiver, only for the purpose of ratable distribution among them."

In Sowles v. Witters (C. C.) 39 F. 403, it appeared that though the stockholder had loaned securities to the bank in a crisis, with the understanding that their proceeds were to be returned to her if the bank was saved, and, if it was not, would be credited on her assessment as a stockholder, it was again held that she was not entitled as against other creditors to set off the bank's debt to her for the proceeds, against her assessment, but was, as to the debt to her, on the same footing as any other creditor. But in 40 F. 413 on a motion of the receiver to set off in equity dividends accruing to her in liquidation of the bank against her unpaid assessment liability, the set-off was thus allowed: "If the judgment is enforced, she will pay its amount to the defendant; if the decree is enforced, he will pay the amount of these dividends to her. The receipts and payments are in the same right in each behalf. Circuity will be avoided, and the judgment and decree be both carried out, by making the decree for the application of

[1] While there is authority to the contrary, such liability, though imposed by statute, has a contractual base. Citizens' Bank v. Hibernia Bank, 19 La. App. 461, 140 So. 705, 708; McDonald v. Thompson, 184 U. S. 71, 22 S. Ct. 297, 46 L. Ed. 437; Williams v. Travis (C. C. A.) 277 F. 134;

c/f Best v. Turner (C. C. A.) 67 F. (2d) 786, 90 A. L. R. 1293.
[2] (C. C.) 32 F. 130; (C. C.) 32 F. 767; (C. C.) 35 F. 640, 641, 1 L. R. A. 64; (C. C.) 38 F. 700; (C. C.) 39 F. 403; (C. C.) 40 F. 413.

the dividends upon the judgment. The power of the court to so frame its decree as to make this set-off seems to be ample."

It would seem then, that if the bank was a stockholder in the Gulfport Bank and liable on its assessment as such, the decree offsetting the two claims was equitable. But we do not decide the point, for we think that in the light of the applicable statutes and decisions it may not be doubted that what occurred did not make the Canal Bank a stockholder, or subject it to assessment. It is settled law that national banks are without power to buy national bank stocks, and that purchases of such stock do not estop them from defending against assessments, by asserting that they are. California National Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198; Concord First Nat. Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed. 1007; Schofield v. Goodrich (C. C. A.) 98 F. 271, 272. An examination of the applicable statutes and decisions and a consideration of the public policy of Louisiana toward assessment liability compels the conclusion we think, that its state banks are equally without power to invest their funds in national bank stocks, without power to subject assets pledged by its laws, to the purposes of the bank, to the hazards of the contract of guaranty which stockholding in national banks imposes. Just as under the banking laws of the United States a national bank may not pledge or mortgage its assets to secure a deposit, Texas & P. Ry. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777, so Louisiana state banks may not. Carter v. Brock, 162 La. 12, 110 So. 71. Just as making contracts of guaranty or suretyship or lending the bank's credit is not legitimate banking business for a national bank, so it is not for a state bank. Catherine Planting & Mfg. Co. v. Pointe Coupee T. & S. Bank, 160 La. 963, 107 So. 711, 712. The Constitution of Louisiana (Const. 1913, art. 265) forbids a corporation's engaging in any business other than that expressly authorized by its charter or incidental thereto.

Section 3, Act No. 184 of the Act of 1916 (page 418) provides that banking companies organized under the act "shall have the following powers and no others." The list of powers following does not embrace the power to purchase national bank stock. Section 3, Act No. 229. Acts 1924 (page 447) provides "banking associations shall have the following powers, and no others," and the following list does not contain such power. Interstate Trust & Banking Co. v. Reynolds, 127 La. 193, 206, 53 So. 520, citing with approval California Bank v. Kennedy, supra, held ultra vires and unenforceable the contract of a state bank to enter into partnership for the building of a levee. In Citizens' Bank v. Hibernia Bank, 19 La. App. 461, 140 So. 705, the Court of Appeals of Louisiana, declaring that the statute law of Louisiana provides that no shareholder in a banking association shall be liable for its debts and contracts to a greater extent than his shares therein, held a cause of action based upon a bank stock assessment made in Georgia repugnant to the settled public policy of Louisiana.

Appellants say that the purchase was authorized by Act No. 91 of the Acts of 1918 (section 554, La. General Statutes Dart 1932, Reserves banks must have) providing that: "For the remainder of its liabilities for demand deposits, there shall be kept on hand * * * or bonds, stocks, or securities of the United States, or of any of the United States, or of the municipalities or corporations, public or private, thereof, or of the Levee Boards of the State of Louisiana." This will not do. If "stocks" as there used, does embrace stocks of ordinary private corporations, it only embraces them when acquired in connection with and as incidental to the doing of a banking business, and not when acquired as here, for an accommodation, with a liability of guaranty contingently attached. The offset was without basis. The decree is reversed and the cause is remanded, for further proceedings in accordance herewith.